TEXAS WATER RIGHTS COMMISSION
et al., Petitioners,

v.

CROW IRON WORKS et al.,
Respondents.

No. B–7903.

Supreme Court of Texas.

May 30, 1979.

Mark White, Atty. Gen., Douglas G. Caroom, Asst. Atty. Gen., Austin, King, Waite & Guerra, Neal P. King, Mission, for petitioners.

Booth, Lloyd & Simmons, Frank R. Booth, Austin, Stubbeman, McRae, Sealy, Laughlin & Browder, James W. Wilson, Austin, for respondents.

DENTON, Justice.

Crow Iron Works, L.M.B. Corp., Gustave Ring and Hidalgo County Water Control and Improvement District No. 15, respondents here [hereinafter "Crow Iron Works, et al."], brought suit against the Texas Water Rights Commission, petitioner here. Several water districts intervened on behalf of the Commission. The suit seeks to set aside a Commission order denying Crow Iron Works, et al.'s petition to upgrade water rights awarded them or their predecessors under the judgment entered in the Lower Rio Grande Valley water rights adjudication. *State v. Hidalgo County W.C. I.D. No. 18*, 443 S.W.2d 728 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.) [hereinafter "the Valley Water Case"]. The primary issue is whether the judgment in the Valley Water Case is res judicata of the water rights asserted here. The trial court upheld the Commission's determination that the Valley Water Case is res judicata of Crow Iron Works, et al.'s claims. The court of civil appeals reversed and remanded the cause for a trial on the merits. 569 S.W.2d 638. We reverse the judgment of the court of civil appeals and affirm the judgment of the trial court.

The Valley Water Case was a massive adjudication brought by the State of Texas in October 1956 to determine rights to the use of the United States' share of the waters of the Rio Grande between the Falcon Reservoir and the Gulf of Mexico. The case involved approximately 3,000 named defendants and 850,000 acres of land. It was not completed until 1970 when this Court refused all applications for writ of error with the notation "no reversible error." [1]

The State's fifth amended petition in the Valley Water Case prayed that "the Court determine the validity and priority in point of time of each and every right to appropriate, impound, divert and use waters of the Rio Grande claimed by Defendants" and that "the Court permanently enjoin those Defendants found without valid and subsisting water rights . . . from appropriating, impounding, diverting or using waters of the Rio Grande." On September 21, 1962, the trial court took judicial custody of the waters of the Rio Grande and filed a lis pendens notice in each of the four counties affected by the suit. The notice stated:

> [S]uch suit is a cause of action which affects any and all claim of right of land in Starr, Hidalgo, Willacy and Cameron Counties, Texas, alleging any nature of right to use waters of the Rio Grande River as of October 17, 1956, or thereafter . . . . [A]ll persons hereafter that may be interested in obtaining to any land such right or rights, if any, are hereby put on notice that said suit is pending, and that the nature of the law suit is such that the final judgment will determine the nature of such right . . . .

The trial court required "all persons owning real property outside of the organized districts, claiming right to use any of the waters of the Rio Grande to make themselves parties to the suit and submit to the jurisdiction of the Court." The trial court entered its final decree on August 1, 1966. The decree divided water rights into five classes and adopted a system of weighted priorities under which water would accrue faster to higher priorities than to lower priorities.

The court of civil appeals in the Valley Water Case affirmed in part and reversed in part. The court classified the water rights of irrigators into two classes: Class A (Legal) rights and Class B (Equitable) rights. Class A rights were given those persons who had complied with the appropriation statutes of the State or whose rights had been recognized by the State. Generally, use of water prior to the com-

---

1. Both the Valley Water Case and the decision in *Valmont Plantations v. State of Texas* contain thorough summaries of the history of water rights along the Rio Grande. 443 S.W.2d 728, 733–39; *Valmont Plantations v. State of Texas*, 346 S.W.2d 853, 855–78 (Tex.Civ.App.— San Antonio 1961), aff'd, 163 Tex. 381, 355 S.W.2d 502 (1962). These two landmark cases rectified the almost hopeless confusion in Texas water law prior to those decisions. We refer to them here for the historical background material relevant to the cause before us.

mencement of the Valley Water Case, coupled with a valid paper claim to water, entitled one to a Class A right. Class B rights were given those who had been making a good faith use of the waters of the Rio Grande for irrigation purposes prior to the commencement of the Valley Water Case, but who did not qualify as Class A users. Generally, good faith use of water without a valid paper claim entitled one to a Class B claim.

Both Class A rights and Class B rights are entitled to an allotment of up to 2.5 acre-feet per acre, but water is credited to Class A rights at a 70% faster rate than it is credited to Class B rights. As a practical matter, the difference between Class A rights and Class B rights is that in times of extreme drought when there is insufficient water to provide everyone with the full 2.5 acre-feet per acre allotment, Class B will suffer proportionally greater shortages than Class A rights.

Crow Iron Works, et al. purchased unutilized paper water rights from entities who were parties to the Valley Water Case. Crow Iron Works, L.M.B. Corp. and Hidalgo County W.C.I.D. No. 15 all purchased their rights from Louis B. Hexter, a party to the suit and a good faith irrigator prior to the inception of the suit. Hexter purchased these unutilized rights from Border Development Co. through Hidalgo County W.C.I.D. No. 1. The purchase occurred after the inception of the suit but before the lis pendens notice in 1962 and before the entry of final judgment in 1966. Similarly, Gustave Ring, a party to the suit, purchased his rights from Hidalgo and Willacy County W.C.I.D. No. 1, also a party to the suit. Gustave Ring was a good faith irrigator before the inception of the suit, but purchased these unutilized paper rights during the pendency of the suit. Both Hexter and Ring were awarded Class B rights in the Valley Water Case.

The court of civil appeals in the Valley Water Case discussed Hexter's claims in its per curiam unpublished supplemental opinion:

A claim is made for a Class I (trial court) priority which would place these lands in Class A as established by this court. This claim is based upon the conveyance of a water right from Hidalgo County Water Control and Improvement District No. One to Border Development Company and then to Hexter. The date of this conveyance is long after the court took judicial custody of the American waters of the Rio Grande. See, statement relating to Hidalgo County Water Control and Improvement District No. Thirteen.

. . . . .

*Hidalgo County Water Control and Improvement District No. Thirteen* . . . It may be that such state authority as will control and regulate the waters of the Rio Grande after the determination of this suit would be empowered to make some adjustment in this situation, but *neither the trial court nor this court in the present cause can recognize contracts or actions taken by parties, pendente lite, while the Rio Grande waters were in judicial custody.*

*State v. Hidalgo County W.C.I.D. No. 18,* No. 261 at 9, 10–11 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.) (unreported) [emphasis added].

With respect to Gustave Ring's claims under the rights conveyed by Hidalgo and Willacy W.C.I.D. No. 1, the court of civil appeals stated:

It appears that subsequent to the filing of this suit and the trial court's action in taking judicial custody of the American waters of the Rio Grande, there were in some instances [Gustave Ring included] additional contracts executed by the district which, so it is contended, operated to vest a legal title to a water right in some of the Willacy County claimants. *Because these contracts or purported conveyances were executed pendente lite, we cannot recognize them as forming a basis for an equitable claim or raising an equitable claim to a legal status.*

443 S.W.2d at 754 [emphasis added].

The court of civil appeals judgment on rehearing in the Valley Water Case concludes:

It is FURTHER ORDERED, ADJUDGED AND DECREED by the Court that any and all relief sought by any party hereto which is not specifically granted herein be, and the same is hereby denied.

Crow Iron Works, et al. contend that the court of civil appeals reserved the question of the status of their water rights by the above passages. This contention is without merit. We interpret the above passages as applications of the doctrine of lis pendens. We conclude that the doctrine of res judicata, coupled with the doctrine of lis pendens, precludes the recognition of the water rights asserted here.

■ Generally, the lis pendens doctrine states that a court which has acquired jurisdiction of a cause of action is entitled to proceed to the final exercise of that jurisdiction without the interference of anyone with the subject matter or res before the court. *See*, 37 Tex.Jur.2d, *Lis Pendens*, § 1 (1962); Olds, *Lis Pendens*, Hous.L.Rev. 221 (1966). Under this doctrine, one acquiring an interest in the property involved in a lawsuit takes the interest subject to the parties' rights as finally determined by the court. 5 G. Thompson, Commentaries on the Modern Law of Real Property § 4508, at 391 (1924 & Supp.1958); 5 H. Tiffany, the Law of Real Property § 1294, at 82 (1939 & Supp.1979). Mr. Justice Joseph Story expressed the rule and rationale of lis pendens as follows:

> [H]e who purchases during the pendency of a suit, is held bound by the decree that may be made against the person from whom he derives title . . . . [I]t is a rule founded upon a great public policy; for, otherwise, alienations made during a suit might defeat its whole purpose, and there would be no end to litigation. And hence arises the maxim, *Pendente lite, nihil innovetur*; the effect of which is not to annul the conveyance, but only to render it subservient to the rights of the parties in the litigation. As to the rights of the parties, the conveyance is treated as if it never had any existence; and it does not vary them.

1 J. Story, Equity Jurisprudence § 406 (6th ed. 1853) (footnotes omitted). Texas courts follow the lis pendens rule. *Hartel v. Dishman*, 135 Tex. 600, 145 S.W.2d 865 (1940); *Rio Bravo Oil Co. v. Hebert*, 130 Tex. 1, 106 S.W.2d 242 (1937).

■ In the Valley Water Case, the court exercised jurisdiction over all claims to water rights in the lower Rio Grande. The predecessors of Crow Iron Works, et al. were parties to this suit and therefore had notice of the extent of the lawsuit. During the pendency of the litigation the predecessors purchased unutilized paper water rights from the parties who owned them at the inception of the lawsuit. In this context, the language of the court of civil appeal's opinion in the Valley Water Case is nothing more than a pronouncement of the lis pendens doctrine. The court was protecting its power to determine the water rights as they existed at the inception of the litigation. The language indicates that persons were not allowed to litigate rights which they claimed as a result of contracts executed pendente lite. This by no means authorized the litigation of these rights at a later time. The language in the court of civil appeals opinion indicating that a state authority might be empowered "to make some adjustment in this situation" means that Crow Iron Works, et al. might seek to have that state agency recognize in them the portion of the rights their predecessors transferred to them. Nevertheless, this would afford them only those rights which the adjudication granted their predecessors who were the parties entitled to assert the rights at the inception of the litigation.

■ The doctrine of res judicata states that a cause of action once finally determined, without appeal, between the parties, on the merits, by a competent tribunal, cannot afterwards be litigated by new proceedings either before the same or any other tribunal. Steakley & Howell, *Ruminations on Res Judicata*, 28 Sw. L.J. 355 (1974). The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their priv-

ies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit. *Griffin v. Holiday Inns of America*, 496 S.W.2d 535 (Tex.1973); *Abbott Laboratories v. Gravis*, 470 S.W.2d 639 (Tex. 1971); *Ogletree v. Crates*, 363 S.W.2d 431 (Tex.1963); *Hanrick v. Gurley*, 93 Tex. 458, 56 S.W. 330 (1900).

All the requirements of res judicata have been shown in this cause. Although the record does not reveal whether Crow Iron Works, et al.'s predecessors at the time of the inception of the litigation asserted the water rights in question here, they might have asserted these rights. We therefore hold that the judgment in the Valley Water Case is res judicata of the water rights asserted by Crow Iron Works, et al. Most of the policy considerations underlying the doctrine of res judicata, including the desirability of stable decisions and economy of court time, require this holding. *See,* Steakley & Howell, *supra* at 358–59.

The judgment of the court of civil appeals is reversed and the judgment of the trial court is affirmed.

JOHNSON, J., not sitting.