Philip BOYNE, et ux., Appellants,

v.

Frank HARRISON, et al., Appellees.

No. 13544.

Court of Appeals of Texas,
Austin.

Feb. 9, 1983.
Rehearing Denied March 9, 1983.

Paul E. Knisely, Spivey & Grigg, Samuel D. McDaniel, McDaniel & Travis, Austin, for appellants.

Mark White, Atty. Gen., Susan O. Bradshaw, Asst. Atty. Gen., Austin, for appellees.

Before PHILLIPS, C.J., and EARL W. SMITH and BRADY, JJ.

PHILLIPS, Chief Justice.

Appellants, Dr. Philip J. Boyne and his wife, Mary Ann Boyne, plaintiffs below, appeal from a judgment of dismissal entered upon appellees',[1] defendants below, plea in bar.

We affirm in part and reverse and remand in part the judgment of the trial court.

On May 1, 1974, Dr. Philip Boyne was appointed Dean of the Dental School at the University of Texas Health Science Center at San Antonio. At this time he was also appointed a full professor with tenure in the Department of Oral Surgery. He served as Dean of the Dental School "at the pleasure" of Frank Harrison, President of the Health Science Center. Between his appointment and his subsequent discharge, the focal point of this appeal, Dr. Boyne taught in the dental school, performed oral surgery, conducted research in oral surgery, and performed the administrative duties of dean.

On October 18, 1976, at a meeting of the dental school faculty, President Harrison, reading from a prepared statement, fired Dr. Boyne stating that he did so because he and Dr. Boyne disagreed on certain administrative approaches to the dental school.

During Dr. Boyne's tenure as Dean, rumors and allegations of his alleged fiscal malfeasance surfaced and prompted President Harrison to appoint an ad hoc committee to investigate the rumors and evaluate Dr. Boyne's overall job performance as Dean. At the faculty meeting, at which Dr. Boyne was fired, President Harrison stated that all the rumors of Dr. Boyne's impropriety were groundless and promised administrative action against any faculty member who publicly stated otherwise. President Harrison also stated that he had placed no reliance on the investigative committee's report because of possible prejudice against Dr. Boyne held by faculty members on the committee. President Harrison collected all copies of the report, except for Dr. Boyne's copy and a copy he filed in his personal files.

On October 21, 1976, three days after his discharge, Dr. Boyne filed a federal lawsuit in the Western District of Texas in which he sued President Harrison and the Regents of the University of Texas system, all in their official capacities. Dr. Boyne alleged

---

1. Appellees are Frank Harrison, President of the University of Texas Health Science Center at San Antonio, Texas; Drs. Barry Kent Norling, Sam W. Hoskins, Jr., and Elmer W. Burnette, Jr., employed as faculty members at the Health Science Center; and Dr. Hugh B. Tilson, chairman of the investigatory committee and an employee at the Health Science Center. All five appellees are sued in both their official capacity, as an employee of the Health Science Center, and their individual capacity.

that the manner and circumstances of his discharge, especially the issuance of the investigative committee's report, operated to impose a stigma upon his good name and professional reputation and thereby deprived him of liberty without due process of law.[2] In his lawsuit, filed under 42 U.S.C. § 1983,[3] Dr. Boyne sought declaratory relief—a declaration that Dr. Boyne was entitled to a public hearing before his discharge, and injunctive relief—enjoining President Harrison and the Board of Regents from dismissing Dr. Boyne without such a hearing.

On October 25, 1977, the United States District Court dismissed Dr. Boyne's complaint ruling that Dr. Boyne, who served "at the pleasure" of President Harrison, had not been publicly stigmatized by the Board of Regents or President Harrison at the time of his discharge; and thus, was not denied his liberty interest in his reputation. Accordingly, Dr. Boyne was not denied due process of law by the defendants' failure to provide Dr. Boyne with a public hearing prior to his discharge. The federal trial court also ruled that the Board of Regents and President Harrison had not defamed Dr. Boyne by the investigative committee's preparation of its report, since the report was never made public and President Harrison, when firing Dr. Boyne, stated that the report played no part in his decision to fire Dr. Boyne.

On August 10, 1977, ten months after Dr. Boyne's discharge as Dean and his filing the civil rights lawsuit in federal court, but two months prior to the federal court's judgment described above, Dr. Boyne filed a lawsuit in a Bexar County District Court. In this state lawsuit, whose dismissal is now appealed, Dr. Boyne and his wife, Mary Ann Boyne, named President Harrison, Drs. Barry Norling, Sam Hoskins, Jr., Elmer Burnette, Jr., and Hugh Tilson as defendants in both their official and individual capacities.

Dr. Boyne alleged that President Harrison and Dr. Tilson, as chairman of the investigative committee, negligently investigated the allegations and rumors of Dr. Boyne's alleged fiscal malfeasance. Dr. Boyne further alleged that the investigation actually resulted in a report which was patently false and greatly damaging to his reputation.

Dr. Boyne also pleaded that Drs. Norling, Hoskins, and Burnette defamed him by spreading the rumors of his alleged fiscal malfeasance, which they did know or should have known were false.

Dr. Boyne prayed that the state trial court award him five hundred thousand dollars as damages for (1) being deprived of his liberty interest in his reputation by President Harrison and Dr. Tilson, without the due process of law, and (2) being de-

---

**2.** "In a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed. (authority omitted)" *Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). "Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual ... generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). Reputation is certainly one of those privileges and is accordingly protected by the Fourteenth Amendment. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

But, reputation alone, apart from some more tangible interest is not sufficient to invoke the procedural protection of the due process clause. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In the lawsuit in federal court, Dr. Boyne also alleged that the harm to his reputation also affected his employment, thus attempting to circumvent the restrictive holding of *Paul v. Davis, supra.*

**3.** 42 U.S.C. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceedings for redress. For the purpose of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

famed by the actions of all the named defendants by which he is deprived of further advancement and higher earnings in his profession in other regions of the United States.

After a transfer from Bexar County to Travis County on defendants' plea of privilege in March of 1980, the cause was set for trial on May 18, 1981.[4] On May 8, 1981, appellees, as defendants, filed an amended original answer, special exceptions, and pleas in bar and abatement. At a hearing on May 15, 1982, the last working day before the trial date, the trial court sustained appellees plea in bar and plea in abatement [5] and dismissed the lawsuit.

Appellees' plea in bar alleged "Plaintiffs entire claim is barred under the doctrine of res judicata or collateral estoppel. On October 25, 1977, judgment was duly rendered in the case of Boyne v. Board of Regents and Frank Harrison by the Federal District Court in Austin."

Appellees' position before the trial court below as movants and before this appellate court is that Dr. and Mrs. Boyne may not bring this state lawsuit because (1) the federal district court ruled that there was no publication of the defamatory report so that President Harrison and Dr. Tilson cannot be liable for any resulting damages; and therefore, the suit is barred, (2) the federal district court ruled that appellant had no liberty or property interest in the position as Dean so he did not deserve a public hearing before his discharge; and accordingly, no violation of his constitutional rights occurred; and therefore, no damages may be recovered by appellants; and there-

fore, the present suit is barred, and (3) the common law cause of action against the other doctors on the faculty for damages from their alleged defamatory statements should have been joined under the concept of pendant jurisdiction in the federal court with Dr. Boyne's statutory due process claims; and since they were not, the cause of action is now barred.

We agree with appellees' first two contentions, but we disagree that the concept of pendant jurisdiction now bars the common law cause of action against the three faculty doctors for the alleged defamation of Dr. Boyne's reputation and the resulting damages.

## I.

■ Appellees by reply points ask this Court to affirm the trial court's dismissal of appellants' lawsuit because this lawsuit is barred by the legal theories of res judicata and collateral estoppel. "The doctrine of res judicata states that a cause of action once finally determined, without appeal, between the parties, on the merits, by a competent tribunal, cannot afterwards be litigated by new proceedings either before the same or any other tribunal." *Texas Water Rights Commission v. Crow Iron Works,* 582 S.W.2d 768, 771 (Tex.1979).[6] "The doctrine of collateral estoppel differs in that it precludes relitigation of only those issues actually and finally decided in a prior action." *Hanrick v. Gurley,* 93 Tex. 458, 56 S.W. 330 (Tex.1900).

■ In the federal lawsuit, appellant sought declaratory and injunctive relief against President Harrison and the Board

---

4. Appellees, as defendants below, originally filed a plea of privilege in September of 1977 seeking to transfer this cause to Travis County. Their plea was based on their belief that Dr. Boyne was actually seeking recovery from the State of Texas; accordingly, the lawsuit had to be tried in Travis County. Dr. Boyne withdrew his controverting affidavit in March of 1980, at which time the lawsuit was transferred to Travis County and set on the trial docket.

5. Appellees' plea in abatement, sustained by the trial court, alleged that Dr. Boyne and his wife could not sue appellees in their official capacity because the legislature had not con-

sented to the suit. Appellants do not appeal this part of the trial court judgment so this Court will not pass on the trial court's action and that part of the judgment is, of course, final.

6. "The rule of res judicata rests upon the policy of protecting a party from being twice vexed for the same cause, together with that of achieving judicial economy in precluding a party who has had a fair trial from relitigating the same issue." *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex.1971).

of Regents in their official capacities. Dr. Boyne alleged that they had (1) defamed his professional reputation by negligently conducting the committee investigation and releasing the defamatory committee report, and (2) deprived appellant of his constitutional due process rights—a right to a public hearing at which time he could clear his name before his discharge.[7] Dr. Boyne prayed that the federal court enjoin President Harrison and the Board of Regents from discharging him until they had provided him with a public hearing.

The federal court ruled that Dr. Boyne had not been defamed since the committee report was neither published, nor did the report, nor the committee actions play any part in his discharge. The federal court also ruled that he had suffered no constitutional harm since he had not been deprived of either a property[8] or a liberty interest[9] in his discharge.

In the state suit, whose dismissal is now appealed to this Court, appellant seeks monetary damages from President Harrison and Dr. Tilson, chairman of the investigative committee, for the same acts upon which the federal court has denied injunctive and declaratory relief. We are mindful that Dr. Boyne in suing President Harrison and the Board of Regents in their official capacities in the federal suit, was precluded from seeking a recovery in the federal court from the treasury of the State. This recovery is

precluded in the federal court, hearing Dr. Boyne's 42 U.S.C. § 1983 cause of action, by the terms of the Eleventh Amendment to the United States Constitution.[10] *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Accordingly, res judicata does not bar that part of the State lawsuit which seeks monetary recovery from President Harrison and Dr. Tilson in their official capacities, since this claim could not have been joined in the federal lawsuit seeking declaratory and injunctive relief.

■ But, "(t)he scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also causes of action or defenses *which arise out of the same subject matter and which might have been litigated in the first suit.*" *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 362–63 (Tex.1971). That claim against President Harrison and Dr. Tilson, which now seeks in the State lawsuit monetary damages for these defendants' alleged constitutional wrongs in their non-official, individual capacities, could have been joined in the federal lawsuit, since such suit—not seeking a recovery from the treasury of the State—is not barred by the Eleventh Amendment. It seems that through the exercise of "diligence," this claim could

---

**7.** Dr. Boynes unsuccessfully argued that he had such a right. It appears that he relied upon the provisions of *Board of Regents v. Roth, supra,* and *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1970) for his claim.

**8.** The federal court included in its judgment the following conclusion of law:

Boyne had no "property interest" in the deanship in question, it being a position held at the pleasure of higher administration.

The federal court expressly found that Dr. Boyne was employed as Dean of the Dental School with the understanding that he serve at President Harrison's "pleasure."

**9.** See note 2, *supra.*

The federal court included in its judgment the following conclusion of law:

Boyne had suffered no public stigmatizing, giving rise to a "liberty interest" in the constitutional sense, by any defendant. *Sims v.*

*Fox,* 505 F.2d 857 (1974) (en banc); *Kaprelain [Kaprelian] v. Texas Womens University,* 509 F.2d 857 [133] (1957).

**10.** Dr. Boyne, in bringing suit against President Harrison and the Board of Regents in their official capacities, sought a recovery from the treasury of the State. *Lowe v. Texas Tech University,* 540 S.W.2d 297, 298 (Tex.1976). Such an action for money damages is precluded by the Eleventh Amendment of the United States Constitution. It states:

The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State.

have been joined in the federal lawsuit and decided in that lawsuit. *Russell v. Moeling*, 526 S.W.2d 533, 536 (Tex.1975).

Accordingly, the claim against President Harrison and Dr. Tilson for monetary damages in their individual capacities is barred by the doctrine of res judicata.[11]

We also hold that appellants' claims against both President Harrison and Dr. Tilson, in either their official or individual capacities, are barred by the doctrine of collateral estoppel. The federal court expressly held that (1) Dr. Boyne had not been defamed by the committee's actions, and (2) that he had not been discharged as a result of either the investigation or the report. Such findings preclude the subsequent relitigation of the facts by any competent tribunal. "It appears to be a recognized principle of law that where, in a former suit, an essential issue of fact has been determined and adjudicated, the judgment therein will stop the parties from relitigating the same issue in a subsequent suit ... even though the subsequent suit is upon a different cause of action." *Kirby Lumber Corporation v. Southern Lumber Co.*, 196 S.W.2d 387, 388 (Tex.1946). *See Benson v. Wanda Petroleum Co., supra* at 362–63 (Tex.1971). In light of the federal court's judgment, appellants cannot now seek to relitigate the factual issues which serve as the essence of this very claim against Dr. Tilson and President Harrison in this state lawsuit. Accordingly, that part of the trial court's judgment sustaining appellees' plea in bar and dismissing appellants' cause of action against President Harrison and Dr. Tilson is affirmed.

## II.

Appellants contend that they are not barred by either res judicata or collateral estoppel in bringing a lawsuit against Drs.

Norling, Hoskins, and Burnette for their alleged defamation of Dr. Boyne. We agree.

The federal suit focused upon Dr. Boyne's constitutional injuries resulting from an alleged denial of due process in his discharge. The federal suit dealt only with the committee's actions and investigative report and Dr. Boyne's subsequent discharge. This state suit seeks the recovery for damages sustained by Dr. Boyne and his wife proximately caused by the three doctors alleged spreading of defamatory rumors before the institution of the investigative committee. Dr. Boyne and his wife seek to prove they have suffered mental and financial distress because of Dr. Boyne's thwarted advancement in his profession in other regions of the country because of the three doctors conspiracy to defame his name.

Appellees rebut this contention with the statement that although this cause of action is based on a different set of facts than the federal lawsuit, the common law defamation cause of action should have been joined with Dr. Boyne's constitutional cause of action in the federal court. Appellees contend that appellants' failure to do so now bars the present suit. Appellees rely upon the federal theory of "Pendant Jurisdiction" for this claim.

"Pendant Jurisdiction, in the sense of judicial power, exists whenever there is a claim 'arising under the Constitution, the Laws of the United States, and Treaties made, or which shall be made under this Authority ...,' U.S. Const. Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case'." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Stated more simply, pendant jurisdiction allows a

11. It is important to realize the difference in the federal lawsuit between the impossibility of joining a claim for monetary damages caused by the defendants acting in their official capacities, and the possibility of joining a claim which seeks monetary damages for the defendants acting in their individual capacities, in the federal lawsuit. The former, seeking a recovery from the State treasury, is barred by the Eleventh Amendment, while the latter, seeking a recovery only from the pockets of the individual defendants, is not. This is not to be confused with the possibility of joining parallel claims in the federal court through the federal court's exercise of pendant jurisdiction.

federal court to exercise its jurisdiction over a parallel state claim after its jurisdiction has been properly invoked to decide a federal question. This allows the federal court to decide the parallel claims and this joinder promotes judicial economy.

If the federal court determines that the plaintiff has properly invoked the jurisdiction of the federal court by presenting it a valid federal question, the federal court *may* exercise its discretion and join the state claim, if the two claims "derive from a common nucleus of operative facts." *United Mine Workers v. Gibbs, supra* at 725, 86 S.Ct. at 1138. The United States Supreme Court in *Hurn v. Oursler,* 289 U.S. 238, 246, 53 S.Ct. 586, 589, 77 L.Ed. 1148 (1933) established the rule that a federal court may decide the state claim where it, along with the valid federal claim, is a distinct ground in support of a single cause of action. The *Hurn* Court stated that the federal trial court may not decide the state claim where it presents a distinct cause of action. *See Hagans v. Lavine,* 415 U.S. 528, 547, 94 S.Ct. 1372, 1384, 39 L.Ed.2d 577 (1974). The Court in *Gibbs* explained that a cause of action, as that term is employed in the *Hurn* test, spoke to the single recovery for the wrongful invasion or violation of a specific and individual right. The "grounds" of the cause of action merely constitute the evidentiary means of achieving the violation. 383 U.S. at 723, 86 S.Ct. at 1137. In this cause, it appears appellants present a distinct cause of action apart from Dr. Boyne's constitutional claim raised in the federal court. This distinct claim is for damages caused by the three faculty doctors alleged conspiracy to defame and actual defamation of Dr. Boyne's professional reputation apart from his discharge from the deanship.

The *Gibbs* Court in explaining the *Hurn* test then presented the simplified test that if "a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding," the federal court possesses the "power" to hear and decide both claims. 383 U.S. at 725, 86 S.Ct. at 1138. The Court did not say that the federal court *must* hear the parallel claims, but only stated that if the federal court has been presented with a valid federal question, the court then is to balance judicial economy, convenience to the court and the parties, and basic fairness to the parties in determining if it should exercise its discretionary power to decide the parallel claims. *Hagans v. Lavine, supra; Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

We are unable to see how this prudential, federal rule of jurisdiction, which allows the discretionary joinder of parallel claims in an individual lawsuit by a federal court, now bars appellants lawsuit against Drs. Norling, Hoskins, and Burnette, individually. Although appellants could have conceivably moved the federal court to exercise its jurisdiction over the common law cause of action, such joinder was not mandatory, if even proper. As such, we fail to see how it, being an independent cause of action, based on independent factual allegations, and naming different parties, is now barred by the doctrine of pendant jurisdiction.

We hold that appellants' lawsuit, in so far as it names Drs. Norling, Hoskins, and Burnette, as defendants for their alleged defamation of Dr. Boyne's reputation, and in so far as it seeks damages resulting from his damaged reputation, independent of his discharge as Dean of the Dental School, the lawsuit is not barred by the doctrines of res judicata, collateral estoppel, or pendant jurisdiction.

Accordingly, we reverse that part of the trial court's judgment which dismisses appellants' claims against Drs. Norling, Hoskins, and Burnette for their alleged defamation of Dr. Boyne's reputation. Appellants, in so far as they are able, may seek recovery for damages resulting from these named defendants' alleged acts. But, no recovery may be had for any damages to the extent that they are caused by Dr. Boyne's discharge as Dean or the investigative committee's action or report.

We affirm the trial court's judgment in all other respects.

Affirmed in Part; Reversed and Remanded in Part.