Opinion issued April 7, 2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00094-CV

———————————

Bencor, Inc., Appellant

V.

The Variable
Annuity Life Insurance Company, Appellee



 



 

On Appeal from the 270th District Court

Harris County, Texas



Trial Court Case No. 2008-20349

 



 

MEMORANDUM OPINION

          Appellant
Bencor, Inc. appeals the trial court’s order granting summary judgment in favor
of appellee The Variable Annuity Life Insurance Company.  In three issues, Bencor argues that the trial
court erred in: (1) granting VALIC’s traditional motion for summary
judgment; (2) denying Bencor’s cross-motion for partial summary judgment;
and (3) awarding attorney’s fees and costs to VALIC.  We affirm.

I.                 
Background

Bencor was formed in 1990 for the
purpose of developing and marketing various employee benefit plans for
governmental employers and their employees. 
Among the retirement investment benefit plans developed by Bencor were
the “3121 Plan” and the “Special Pay Plan.” 
VALIC specializes in developing and marketing retirement products and
services to employees of governmental entities, educational groups, and other
organizations.  The two companies entered
into a marketing agreement, whereby Bencor agreed to design and market the 3121
Plans and Special Pay Plans, and VALIC agreed to provide investment vehicles
for the retirement plans and the expertise of its national sales force.  In consideration of Bencor’s performance of
its obligations under the marketing agreement, VALIC agreed to pay Bencor
compensation in the form of various commissions and bonuses as set out in the
agreement.

Bencor and VALIC eventually
renegotiated the marketing agreement to change the rates of compensation.  Under the agreement’s first amendment, VALIC
remained obligated to pay certain specified commissions and bonuses. 
The amended agreement further
provided that, with the exception of the amended terms, “[a]ll terms and
conditions of the [original] Agreement shall remain valid and binding in
accordance with its terms. . . .  [N]o
other enlargement or diminution of rights or responsibilities under the
Agreement [was] either intended or recognized [by the parties].”

          The
parties operated under the revised marketing agreement for twenty-two
months.  In November 2004, VALIC informed
Bencor that it would cease paying current and future commissions and bonuses in
light of a perceived miscalculation and overpayment of commissions and bonuses,
which it believed had occurred over the life of the agreement.  Bencor ultimately initiated arbitration
proceedings to resolve the dispute, seeking damages for amounts earned, a
declaration of its rights under the agreement, and other relief.  It argued in its pre-hearing brief that it
was entitled to damages for past-due and future commissions, and during the
February 2006 arbitration, it presented evidence of future damages under the
marketing agreement through November 2007.

          The
arbitration panel issued an order and award, as well as findings of fact and
conclusions of law.  The panel concluded
that the amended marketing agreement did not eliminate VALIC’s obligation to
pay the disputed commissions and bonuses, and that VALIC breached the marketing
agreement when it refused to pay commissions and bonuses on existing and new
cases.  The panel further concluded that
Bencor did not breach the amended marketing agreement and that it was entitled
to compete with VALIC after payments under the marketing agreement ceased.  The panel denied all of VALIC’s claims and
counterclaims and ordered it to pay over $8 million in damages and over
$1 million in costs and attorney’s fees. 
The award stated that it fully resolved all claims, counterclaims and
disputes of fact advanced by the parties, and that all claims not expressly
granted were denied.

          Bencor
moved to confirm the arbitration award in the federal district court
proceeding, and the court issued a final judgment confirming the arbitration
award and dismissing all the parties’ claims and counterclaims.  VALIC paid Bencor all of the damages awarded
by the arbitration panel.  Subsequently,
VALIC has not paid and refuses to pay post-termination commissions to which
Bencor contends it remains entitled to receive under the terms of the
agreement.  It is VALIC’s refusal to pay
post-termination commissions for existing 3121 Cases and Special Pay Plan Cases
that is the basis of this lawsuit.

Bencor sued VALIC for breach of
contract, declaratory judgment, and an accounting.  VALIC filed a motion for summary judgment
asserting that res judicata barred Bencor’s claims because they had previously
been litigated before the arbitration panel. 
The trial court granted VALIC’s motion for summary judgment, denied
Bencor’s motion for partial summary judgment, and dismissed all of Bencor’s
claims with prejudice.  The trial court
later vacated and re-entered summary judgment against Bencor, reserving the
issue of attorney’s fees for trial.  The
issue of attorney’s fees was tried to a jury, which awarded VALIC $200,122.50
in fees plus conditional appellate fees.

On appeal, Bencor argues that the
trial court erred in granting VALIC’s motion for summary judgment and in
denying its motion for partial summary judgment.  Bencor also argues that VALIC was not
entitled to fees under the Declaratory Judgments Act because the trial court’s
ruling on its motion for summary judgment mooted Bencor’s declaratory judgment
claim, that the fees assessed were unjust and inequitable, that the evidence
was insufficient to support the jury’s award of attorney’s fees, and that the
trial court erred in refusing to instruct the jury on VALIC’s duty to segregate
fees.

II.              
Res judicata

VALIC argues that this lawsuit
involves a claim for future damages that Bencor has already pleaded and proved
before the arbitration panel.  It argues
that Bencor “is suing the same defendant under the same section of the same
contract [and] asserting the same breach and the same future damages,” which
could have been and were litigated, and for which Bencor has already received
an award for damages.  Bencor contends
that the arbitration panel did not have jurisdiction over the claims involved
in this lawsuit because they were unripe at the time of arbitration.  Bencor also argues that the principles of res
judicata are inapplicable because the claims asserted before the arbitration
panel were different from the claims asserted in this lawsuit, i.e., the claims
involve different breaches of different compensation provisions in the
marketing agreement.

We review a trial court’s
summary-judgment decision de novo.  Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005).  To prevail
on summary judgment, the movant has the burden of proving that there is no genuine
issue of material fact and that it is entitled to judgment as a matter of
law.  Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985); see Tex.
R. Civ. P. 166a(c).  In
deciding whether there is a disputed issue of material fact precluding summary
judgment, we take as true evidence favorable to the non-movant, indulging every
reasonable inference and resolving any doubts in its favor.  Provident
Life & Accident Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex.
2003).  A defendant is entitled to summary
judgment based on an affirmative defense if it proves all the essential
elements of the defense as a matter of law.  See, e.g., Cathey v. Booth,
900 S.W.2d 339, 341 (Tex. 1995).

Res judicata, or claim preclusion,
must be pleaded and proved as an affirmative defense.  Tex.
R. Civ. P. 94; see Barr v.
Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992).  Res judicata prevents the re-litigation of a
claim or cause of action that has been finally adjudicated in a prior
lawsuit.  Barr, 837 S.W.2d at 628; Houtex
Ready Mix Concrete & Materials v. Eagle Const. & Envtl. Servs., L.P.,
226 S.W.3d 514, 518 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  For res judicata to apply, the defendant must
show that: (1) there is a prior final judgment on the merits by a court of
competent jurisdiction; (2) the parties in the second action are the same
or in privity with those in the first action; and (3) the second action is
based on claims that were or could have been raised in the first action.  Igal v.
Brightstar Info. Tech. Group, Inc., 250 S.W.3d 78, 86 (Tex. 2008). 
Res judicata does not operate as a
bar to litigation when the second claim could not have been raised in the
previous litigation.  See Ingersoll-Rand
Co. v. Valero Energy Corp., 997 S.W.2d 203, 209 (Tex. 1999); Tricon Tool & Supply, Inc. v. Thumann,
226 S.W.3d 494, 511 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).  As such, it will not bar recovery in a
subsequent lawsuit if the claims were unripe at the time of the prior
judgment.  See Citizens Ins. Co. v.
Daccach, 217 S.W.3d 430, 457 (Tex. 2007). 
A subsequent lawsuit will, however, be barred if it arises out of the
same subject matter of a previous suit and which through the exercise of
diligence, could have been litigated.  See, e.g., Hallco Texas, Inc. v. McMullen County, 221 S.W.3d 50, 60 (Tex.
2006); Barr, 837 S.W.2d at 628.

In determining whether a claim
“could have been litigated,” we follow a transactional approach, which requires
consideration of several factors to decide whether the facts constitute a
single transaction, including “‘their
relatedness in time, space, origin, or motivation, and whether, taken together,
they form a convenient unit for trial purposes.’”  Getty
Oil Co. v. Ins. Co. of N. America, 845 S.W.2d 764, 789 (Tex. 1992) (quoting
Restatement (Second) of Judgments § 24 cmt. b (1980)); Hallco
Tex., Inc. v. McMullen Cnty., 221 S.W.3d 50, 58 (Tex. App.—Houston [1st
Dist.] 2007, no pet.).

Accordingly, whether res judicata
applies in this case partly depends upon what the parties argued (or could have argued) and what the arbitration panel decided (or could have decided) during the arbitration process.  Thus the scope of res judicata is not limited
to matters actually litigated.  Barr, 837 S.W.2d at 630 (citing Texas Water Rights Comm. v. Crow Iron Works,
582 S.W.2d 768, 771–72 (Tex. 1979)).  We
must analyze “the factual matters that make up the gist of the complaint,
without regard to the form of action” and, applying the transactional approach,
ascertain whether the facts constitute a single transaction.  Id.;
see also Getty Oil, 845 S.W.2d at
764. 

The dispute arose when VALIC refused to pay commissions and bonuses due
to Bencor under their amended marketing agreement.  Bencor demanded arbitration to resolve the
disagreement.  Because the commissions
and bonuses paid by VALIC were its only source of income, Bencor began
marketing its retirement accounts through another company in order to mitigate
its damages.  This action prompted VALIC
to sue Bencor in state court for a temporary restraining order
and preliminary injunction to restrain Bencor from competing with VALIC pending
the arbitration proceeding.  Bencor
removed the dispute to the federal court and argued that VALIC’s initial breach
justified its actions and made the non-compete agreement unenforceable.

In its third amended demand for arbitration, Bencor described the nature
of the dispute as follows:

Breach of
Contract and Declaratory Judgments Actions for: (i) failure of Respondent to pay monies due and owing to
Claimant for amounts earned by
Claimant for Marketing Bonuses, Asset-Based Commissions, Commissions on Deposit
Flow for Retirement Benefit Plans and un-reimbursed expenses pursuant to the terms of the Contract documents[;] (ii) failure of Respondent to provide a
competitive investment product as required by the Contract documents[;]
(iii) failure of Respondent to pay its field agents as required by the
Contract documents; (iv) declaration as to the rights of the Parties; and
(v) declaration as to the existence of ambiguity and/or mutual
mistake in the language of the contract.

 

Bencor’s
pre-hearing brief stated that the resolution of the parties’ dispute turned on
the arbitration panel’s interpretation of the first amendment to the marketing
agreement.  Assuming that its
interpretation prevailed, Bencor argued that it was entitled to damages for
unpaid past commissions and for future commissions to which it would have been
entitled had it not terminated the agreement with VALIC.  Bencor also sought a declaration of its
rights under the marketing agreement as amended.

          In the course of discovery, Bencor
produced a report by its expert, dated December 9, 2005, estimating the total
amount of damages due to Bencor.  This
damages model was expressly based on the expert’s assumption that Bencor was
entitled to commissions on plans acquired by both Bencor and VALIC through the
effective termination date of the marketing agreement, which he assumed was
November 23, 2007.  The expert testified
that he “was charged with calculating what would have happened had Bencor and
[VALIC] maintained their relationship” from November 2004 through November
2007.  In doing so, he calculated the
past commissions VALIC already owed to Bencor—from November 2004 when
VALIC refused to pay Bencor any commissions or bonuses through the date of
arbitration—as well as the future commissions VALIC would have been obligated
to pay had it not breached the agreement—through the date of arbitration and
into the future until November 23, 2007. 
For this period, he estimated that “the present value of [Bencor’s]
economic losses total[ed] $14,294,516, consisting of $8,940,908 of past losses
and $5,353,608 of future losses.”  VALIC
offered the testimony of its own expert. 
Based on her independent calculations, she concluded that Bencor’s past
and future losses calculated through November 2007 and reduced to present value
were approximately $6.6 million to $7.2 million.

Ultimately the arbitration panel concluded that VALIC
breached the marketing agreement.  It
ordered VALIC to pay Bencor $8,045,425 in damages, as well as Bencor’s
attorney’s fees and costs.  The award was
“in full resolution [of] all claims, counterclaims and disputes of fact
advanced by the parties” during arbitration. 
All claims not expressly granted were denied.  The panel did not specifically address
Bencor’s claim for declaratory relief, and Bencor did not object to the panel’s
failure to address this claim, nor did it request clarification as to its
future rights under the marketing agreement.

The present controversy centers on Bencor’s assertion that
it is entitled to additional damages under the marketing agreement for separate
breaches of the contract.  Bencor asserts
that it is entitled to post-termination commissions pursuant to section 4(d) of
the marketing agreement, which provides that: “[U]pon and following the
termination of [the] Agreement, [VALIC] will pay Bencor . . . compensation . .
. for [3121 Plan and Special Pay Plan] Cases in existence at the time of
termination . . . .”  In support of its
position, Bencor argues that its claim for post-termination damages was not
ripe at the time of arbitration and that the claims in the present suit do not
arise out of the same common nucleus of operative facts.  VALIC argues that the post-arbitration claims
now advanced by Bencor were ripe and were actually litigated during the
arbitration because Bencor sought future damages and a declaration of its
continuing rights under the marketing agreement.

Bencor correctly states that “[a] case is not ripe when its
resolution depends on contingent or hypothetical facts, or upon events that
have not yet come to pass.”  Patterson v. Planned Parenthood of Houston
& S.E. Tex., Inc., 971 S.W.2d 439, 443 (Tex. 1998).  But in this case, all of Bencor’s claims were
ripe at the time of arbitration.  “Under
the ripeness doctrine, we consider whether, at
the time a lawsuit is filed, the facts are sufficiently developed ‘so that
an injury has occurred or is likely to occur, rather than being contingent or
remote.’”  Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 851-52 (Tex. 2000)
(quoting Patterson, 971 S.W.2d at
442).  Applying these general principles,
a declaratory judgment action may encompass the future rights of parties
pursuant to a contract when the “ripening seeds” of a controversy are
present.  See, e.g., Harris County Mun.
Util. Dist. No. 156 v. United Somerset Corp., 274 S.W.3d 133, 140 (Tex.
App.—Houston [1st Dist.] 2008, no pet.); cf.
BHP Petroleum Co. Inc. v. Millard,
800 S.W.2d 838, 842 (Tex. 1990) (permitting declaratory judgment counterclaim
to proceed for purpose of declaring future rights under contract); Indian Beach Prop. Owners’ Ass’n v. Linden,
222 S.W.3d 682, 702 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (same).  Moreover, the Uniform Declaratory Judgments
Act specifically authorizes declaratory relief construing a contract before
there has been a breach.  See Tex.
Civ. Prac. & Rem. Code Ann. § 37.004(b) (West 2008).  

At the time of arbitration, VALIC had refused to pay Bencor
commissions and bonuses under the amended marketing agreement and both parties
had terminated the agreement.  The
arbitration panel was called upon to interpret the agreement as amended, to
determine which party had breached the agreement, and to assess damages in
accordance with its terms.  Both parties
presented evidence of future damages through November 2007, and Bencor
requested a declaration of its rights under the agreement.  Although Bencor did not specifically seek a
determination of its right to receive post-termination commissions during the
arbitration, it did generally plead a request for a declaration of its rights
under the agreement.  It also requested
future damages in its pre-hearing brief and presented evidence of future
damages to the panel.  The relief
requested could have included within its scope a declaration of Bencor’s right
to receive post-termination compensation. 
See Tex. Civ. Prac. & Rem. Code Ann. § 37.004(b). 
The panel’s award did not include such declaratory relief, and it stated
that claims not expressly granted were denied, yet Bencor failed to object to
or request a clarification.

Bencor argues that its arbitration demand demonstrates that
it only sought damages for amounts owed by VALIC prior to the date of
arbitration.  That is not at all clear
from the one-page Third Demand for Arbitration, which characterized the claim
as one for both breach of
contract and declaratory judgment arising from VALIC’s failure to pay monies
due and owing to Bencor.  Among other
things, the demand sought relief in terms of both “amounts
earned” and a declaration as to the
rights of the parties.  Even more tellingly as to what both parties
understood to be in controversy, the evidence of damages proffered by both
parties’ experts during arbitration included calculations of payments to which
Bencor would have been entitled under the agreement through November 2007.  The panel’s award of over $8 million in
damages is slightly more than the amount of past and future damages calculated
by VALIC’s expert, yet less than the total amount of past damages calculated by
Bencor’s expert.  The award gave no
indication that it was only for past damages, and Bencor failed to seek
clarification from the panel as to that matter.

Based on its narrow interpretation of the arbitration demand,
Bencor contends that the February 2006 expert testimony presented to the
arbitration panel regarding future damages through November 2007 has no
relevance to the preclusive effect of the arbitration award.  To the contrary, that evidence is highly
relevant to our transactional analysis. 
Bencor’s arbitration demand included a request for declaratory relief,
and its pre-hearing brief argued that it was entitled to future damages.  Although Bencor did not expressly identify in
its arbitration demand the post-termination damages it now seeks, the relief
requested in the demand and pre-hearing brief was broad enough to encompass a
request for all future damages.  The
expert testimony concerning future damages through November 2007 made clear
that Bencor could have sought and actually did seek such relief in the prior
proceeding, thereby demonstrating that the claim for future damages could have
been previously litigated.  See Barr,
837 S.W.2d at 628.

Bencor also contends
that its right to receive post-termination commissions was not ripe because it
was uncertain whether VALIC would renew its commitment to follow the terms of
the marketing agreement if the panel determined that VALIC had breached the
agreement.  But this argument belies
Bencor’s ripeness point.  Bencor sought a
determination of its rights and remedies under the contract because the
parties’ future relationship was uncertain. 
At the time of arbitration, neither Bencor nor VALIC knew how the
arbitration panel would rule on the question of whether either party had an
obligation to the other.  Bencor
requested, and the arbitration panel could have awarded, a declaration of the
continuing rights of the parties under the agreement, including Bencor’s right
to receive post-termination compensation. 
When the arbitration panel did not include such a declaration in the
order and award, Bencor did not seek to modify or clarify it.  Bencor cannot now argue that its claim for
post-termination commissions was unripe or that its damages stemming from
VALIC’s breach of section 4(d) were incalculable.

Because Texas follows
the transactional approach for evaluating the application of res judicata, this
suit is barred if it arises out of the same common nucleus of operative facts
and, through the exercise of reasonable diligence, could have been litigated in
the first suit.  See Hallco Tex., 221
S.W.3d at 58; Getty Oil, 845 S.W.2d
at 789.  Bencor’s claim
before the arbitration panel involved the interpretation of the compensation
provisions in section 4 of the amended marketing agreement.  In this suit, it also seeks damages and a
declaration of its rights under section 4(d).  Both claims involved interpretation of the
same contract, and both claims involved the determination of Bencor’s rights
under the agreement.  Bencor argues that
each refusal by VALIC to pay post-termination damages following the arbitration
panel’s decision “constitutes a distinct and separate actionable breach with
its own nucleus of operative facts.”  It
also contends that VALIC could not have been in breach of its post-arbitration
contractual obligations until it failed to pay the required post-termination
commissions in February 2006.  These
arguments are inconsistent with Bencor’s request for future damages in its
pre-hearing brief and with the evidence of future damages presented to the
arbitration panel.  It is also
inconsistent with Bencor’s assertion that the marketing agreement terminated on
May 19, 2005—the day Bencor notified VALIC that it was terminating the
agreement because of VALIC’s failure to pay past due commissions and
bonuses—and with Bencor’s request for a declaration of its rights under the
agreement.  

Because the
arbitration panel’s decision had implications with respect to Bencor’s right to
receive past-due commissions and bonuses, as well its continuing rights under
the agreement, including future compensation, the issue of Bencor’s right to
receive post-termination damages under section 4(d) of the marketing agreement
was ripe.  See Gibson, 22 S.W.3d at 851–52; United Somerset Corp., 274 S.W.3d at 140.  Bencor’s claims before the arbitration panel
were related in time, space, origin, and motivation to its present claim for
post-termination damages, and would have formed a convenient unit for trial
purposes.  See Barr, 837 S.W.2d at 631; Getty
Oil, 845 S.W.2d at 799.  Accordingly,
the arbitration panel’s order and award precludes Bencor’s claims in this
case.  See Samedan Oil Corp. v. Louis Dreyfus Natural Gas Corp., 52 S.W.3d
788, 794 (Tex. App.—Eastland 2001, pet. denied).  Bencor’s first issue is overruled.

In its second issue,
Bencor argues that the trial court erred in denying its motion for partial
summary judgment on the issue of liability. 
Because we hold that the trial court properly granted summary judgment in
favor of VALIC on res judicata grounds, we do not reach this issue.

III.          
Attorney’s fees

          In its third issue, Bencor
argues that this court should reverse the award of attorney’s fees for three
reasons: (1) VALIC was not entitled to fees under the Declaratory
Judgments Act because the ruling on its motion for summary judgment mooted
Bencor’s declaratory judgment claim; (2) the fees assessed were unjust and
inequitable; (3) the evidence was insufficient to support the jury’s award
of attorney’s fees; and (4) the trial court erred in denying Bencor’s jury
instruction on VALIC’s duty to segregate fees.

a.                
Mootness

The availability of attorney’s fees
under a particular statute is a question of law, which we review de novo.  See
Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999).  The Declaratory Judgments Act provides that
the trial court may award costs and reasonable attorney’s fees when doing so is
equitable and just.  Tex. Civ. Prac. & Rem. Code Ann § 37.009 (West 2006).  After prevailing on its motion for summary
judgment, VALIC sought and was awarded attorney’s fees.  Bencor argues that VALIC is not entitled to
attorney’s fees under the Act because its declaratory judgment claim was mooted
when the trial court granted summary judgment on res judicata grounds.

“A case becomes moot if a
controversy ceases to exist or the parties lack a legally cognizable interest
in the outcome.”  Bd. of Adjustment of San Antonio v. Wende, 92 S.W.3d 424, 427 (Tex.
2002).  VALIC’s summary-judgment motion
asserted that all of Bencor’s claims were barred by the doctrine of res
judicata and argued that Bencor was not entitled to a declaration of its rights
because that claim had previously been litigated.  Although the trial court granted summary
judgment in favor of VALIC with respect to all of Bencor’s claims, that
disposition did not moot the question of VALIC’s entitlement to fees as a
prevailing party to Bencor’s declaratory judgment claim.  See Tex. Civ. Prac. & Rem. Code Ann § 37.009; see also Camarena v. Tex. Emp’t Comm’n, 754
S.W.2d 149, 151 (Tex. 1988). 
Accordingly, we conclude that Bencor’s declaratory judgment claim was
not moot and that VALIC could seek fees pursuant to the Declaratory Judgments
Act.  See
Tex. Civ. Prac. & Rem. Code Ann § 37.009; Arthur M. Deck & Assocs. v.
Crispin, 888 S.W.2d 56, 62 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

b.               
Equity

Bencor next argues the fees
assessed were unjust and inequitable. 
More specifically, it contends that VALIC would have incurred fees
preparing the summary-judgment motion even if Bencor had not pleaded a
declaratory judgment claim and that it is inequitable to provide a “windfall”
to VALIC for doing “no more work than filing and presenting a motion for
summary judgment solely on the ground of res judicata.”

“[T]he
Declaratory Judgments Act entrusts attorney fee awards to the trial court’s
sound discretion, subject to the requirements that any fees awarded be
reasonable and necessary, which are matters of fact, and to the additional
requirements that fees be equitable and just, which are matters of law.”  Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998). 
We review the trial court’s determination that such fees were equitable
and just for an abuse of discretion.  Id. at 21.  A trial court abuses its discretion when it
rules without regard for any guiding rules or principles.  Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).

Relying on MBM Financial Corp. v. The Woodlands Operating Co., 292 S.W.3d 660
(Tex. 2009), Bencor argues that VALIC cannot use the Declaratory Judgments Act
as a vehicle to obtain otherwise unrecoverable fees for defense of a breach of
contract claim.  While defense of a
breach of contract claim alone could not support a claim for attorney’s fees,
it does not follow that VALIC could not recover attorney’s fees under the Act
when it raised the defense of res judicata as to both the breach of contract
claim and the claim for declaratory relief. 
See Tony Gullo Motors I, L.P. v.
Chapa, 212 S.W.3d 299, 313 (Tex. 2006). 
“To the extent such services would have been incurred on a recoverable
claim alone, they are not disallowed [as a matter of law] simply because they
do double service.”  Id.  Bencor itself asserted
the request for declaratory relief.  It
was necessary for VALIC to defend that claim, for which the law permits the
prevailing party to recover attorney’s fees. 
We conclude that the trial court did not err in determining that an
award of fees was just and equitable.

c.                 
Sufficiency of evidence

Bencor also challenges the sufficiency of the evidence to support the
jury’s award of attorney’s fees.  We will
not overturn the jury’s verdict unless Bencor demonstrates that the verdict is
so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).  The jury is the sole judge of the credibility
of the witnesses and the weight given to be given to their testimony.  Martitme
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).

During the trial on the issue of attorney’s fees, VALIC presented
evidence that its legal strategy was to seek dismissal of Bencor’s claims on
res judicata grounds.  VALIC’s attorney
testified that because of the economic risk of losing at summary judgment, it was
reasonable and necessary for VALIC to pay approximately $300,000 in attorney’s
fees.  The attorney also testified that
the fees were reasonable and necessary, based on his knowledge of like cases.  In light of this testimony, we conclude that
there was sufficient evidence to support the jury’s award of attorney’s
fees.  See Arthur
Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d
812, 818 (Tex. 1997) (listing factors to be considering in determining
reasonableness of attorney’s fees).

d.               
Segregation of fees

Bencor contends that the trial
court erred in refusing to instruct the jury on VALIC’s duty to segregate
attorney’s fees.  The question of the
need to segregate fees is a question of law, which we review de novo.  Tony
Gullo Motors, 212 S.W.3d at 313.  Parties
claiming attorney’s fees must “segregate fees between claims for which they are
recoverable and claims for which they are not.” 
Id. at 311 (citing Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991)).  “[I]t is only when
discrete legal services advance both a recoverable and unrecoverable claim that
they are so intertwined that they need not be segregated.”  Id.  Although a claim is not disallowed because it
does “double service,” a claimant must segregate fees if any attorney’s fees
relate solely to a claim for which fees are unrecoverable.  Id.
at 313.

In this case, Bencor asserted a breach of contract claim, for
which fees are not recoverable, and a declaratory judgment claim, for which
fees are recoverable.  See Tex. Civ. Prac. & Rem. Code Ann § 37.009.  VALIC moved for summary judgment on
all of Bencor’s claims, arguing that “[t]he claims . . . [were] barred in their
entirety by the doctrine of res judicata.” 
All of VALIC’s summary-judgment arguments were premised on proof of the
res judicata defense, which applied to both claims.  VALIC’s summary-judgment motion argued that
any difference between Bencor’s contract claim and declaratory judgment claim
is “immaterial” because res judicata bars both claims. 

At the trial on attorney’s fees, VALIC’s attorney testified
that Bencor’s claims “were two sides of the same coin.  They [the claims] were . . . inextricably
intertwined . . . .”  He also testified
that it was impossible to segregate the fees:

[Counsel]:   Would it be possible for you to separate the
fees that [VALIC’s attorney] incurred while representing VALIC in this suit?  The fees that [were] spent on defending the
breach of contract to separate those from the fees . . . spent defending the
suit for declaratory judgment?

 

[Witness]:   That’s not possible.  Let me explain why.  For instance, on the motion for summary judgment
on the merits of the contract claim, if we win on that, we defeat the
declaratory judgment action as well.  So,
in other words, defeating one, you defeat the other.  So, everything we did in connection with
every aspect of this case related to the declaratory judgment action.

 

Other
evidence introduced at trial, including VALIC’s billing statements, further
demonstrates that VALIC’s attorneys drafted a summary-judgment motion that
responded to both of Bencor’s claims. 
When, as here, the services necessary to defend a claim for which fees
are available also advances an argument against a claim for which fees are not
recoverable, “then the exception to the general fee segregation rule applies,
and the amount of time or money that was reasonable to expend in performing the
service need not be segregated among the claims advanced.”  In re
Lesikar, 285 S.W.3d 577, 585 (Tex. App.—Houston [14th Dist.] 2009, orig.
proceeding).

Because the evidence
showed it was not necessary, or even possible, for VALIC to segregate its
attorney’s fees, we hold that the trial court did not err in refusing to
instruct the jury.  See Tony Gullo Motors, 212
S.W.3d at 313.  We overrule Bencor’s
third issue.

 

 

 

 

Conclusion

          We affirm the judgment of the trial
court.

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.