NO. 07-02-0138-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JUNE 27, 2003



______________________________




KODY KOTHMANN, APPELLANT



V.



CLINT COOK, APPELLEE




_________________________________



FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 93-543,094; HONORABLE SAM MEDINA, JUDGE



_______________________________



Before REAVIS and CAMPBELL, JJ., and BOYD, S.J. (1)

OPINION


 This is an appeal from a take-nothing summary judgment dismissing appellant Kody
Kothmann's (Kothmann) breach of fiduciary suit against appellee Clint Cook (Cook). In
pursuing the appeal, Kothmann presents four issues for our decision. All of those issues
are related to the question of whether the matters involved in a May 13, 1993 hearing
before the Hays County District Court and Kothmann's presence at that hearing were
sufficient to entitle Cook to the summary judgment on the basis of res judicata. We reverse
the judgment of the trial court.

History

 The suit underlying this appeal has been before this court previously and its history
is set out in some detail in this court's opinion in Scanio v. McFall, 877 S.W.2d 888
(Tex.App.-Amarillo 1994, no writ). Kothmann was formerly married to Elizabeth Tuttle. 
That marriage was dissolved in Lubbock County in 1988. In the decree dissolving the
marriage, the trial court divided the community property, appointed Tuttle managing
conservator of the parties' two minor children and ordered Kothmann to make child support
payments for their benefit. Subsequently, Kothmann filed a motion to modify the divorce
decree in that court. In response to that motion, Tuttle filed a motion to transfer the case
to Hays County, where she and the children were residing at the time. The case was
transferred to the 274th District Court of Hays County where it was presided over by Judge
Linda Rodriquez.

 On April 30, 1992, Judge Rodriquez ordered Kothmann to pay child support and
half of all health care expenses incurred by or on behalf of the couple's minor children. 
Kothmann made the payments as ordered for several months, but failed to make the full
payments during the last three months of 1992. As a result of that failure, Tuttle filed a
motion to enforce the court's order. On February 25, 1993, after a hearing on Tuttle's
motion, the court held Kothmann in contempt for his failure to pay child support and
medical expenses. Cook represented Kothmann in the motion to modify child support and
the contempt motion. At the time of the hearing, Kothmann had paid all of the past due
child support and all but $13.94 of the medical expenses. Kothmann was ordered confined
for 179 months in the Hays County Jail, but the commitment was suspended and he was
placed on probation for 36 months. Terms of Kothmann's probation included his 1) 
continuing to pay $1,092 per month in child support; 2) continuing to pay 50% of the health
care expenses of his children; 3) paying $9,089.75 in attorney's fees to Tuttle in 12
monthly installments of $757.48; and 4) purchasing health insurance for the children within
30 days of the court order.

 Kothmann failed to pay his monthly installments for attorney's fees in April and May
of 1993 and failed to obtain health insurance as ordered. Because of that failure, Tuttle
filed a motion to revoke the suspension of Kothmann's jail commitment. The trial court set
that motion for hearing on May 13, 1993, and issued a capias directing Kothmann be
brought before the court to show cause for his failure to comply with the terms and
conditions of his probation. Additionally, the court entered a turnover order by which Paul
Titzell, an agent of Shearson Lehman Brothers, was directed to turn over to the Lubbock
County Sheriff's Department "[a]ny and all cash, stock certificates, bonds or other
securities" held in the name of, or for the benefit of Kothmann. Kothmann was also
directed to appear with all stock certificates in which he owned an interest other than those
subject to the control of Titzell, as well as any proceeds resulting from the sale of such
stock.

 Although the plea is not included in the record, it seems to be uncontested that
Cook filed a plea of intervention on behalf of his law firm, Ward, Freels & Cook, L.L.P., in
which he sought possession of the items to be turned over to the Lubbock County Sheriff's
Office to the extent of the attorneys' interest in those items. Cook averred that Kothmann
owed at least $5,993.03 in attorney fees and had executed a security agreement giving the
attorneys a secured interest in certain of the stock held by Shearson Lehman Brothers.

 On May 10, 1993, Kothmann was arrested in Lubbock and placed in the county jail. 
At the May 13, 1993 hearing in Hays County, the court heard evidence and arguments
concerning the proper disposition of $9,712.82 obtained from Kothmann's Shearson
Lehman Brothers account. Kothmann appeared at the hearing, but was not represented
by an attorney. Cook appeared on behalf of his law firm and emphasized that fact. On
May 14, 1993, the court issued an order entitled "Order Aiding in Satisfaction of
Judgment," in which it found that Cook's law firm was entitled to $5,993.03 pursuant to its
security agreement with Kothmann and that Tuttle was entitled to the remaining $3,719.79
in partial satisfaction of the prior judgments against Kothmann for attorney fees incurred
by Tuttle. The court also found that Tuttle was to recover $1199 in additional attorney fees
from Kothmann.

 The May 13 hearing did not address the motion to revoke the suspension of
Kothmann's commitment and a hearing was scheduled on those matters for June 10, 1993. 
It appears that no such hearing was ever held. On June 8, 1993, Kothmann, now
represented by counsel, filed the suit underlying this appeal in Lubbock County against
Cook, Michael Scanio (Tuttle's attorney), Judge Rodriquez and Tuttle. Apparently, no
further action has been taken in Hays County on matters pending in that county.

 We are now only concerned with the suit insofar as it affected Cook. In his fourth 
amended original petition, Kothmann made claims against Cook for alleged breach of
fiduciary duty and violations of the Deceptive Trade Practices Act. On May 11, 2000, Cook
filed his motion for summary judgment on the basis that Kothmann's claims were in the
nature of compulsory counterclaims to Cook's quest for attorney fees and because they
were not raised at the May 13, 1993 hearing, they are barred by res judicata.

Discussion

 To prevail on a motion for summary judgment, a movant must establish there is no
genuine issue as to any material fact and that he or she is entitled to judgment as a matter
of law. Tex. R. Civ. P. 166a(c). A defendant who conclusively negates at least one of the
essential elements of a cause of action is entitled to summary judgment as to that cause. 
Randall's Food Markets., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). Likewise, a
defendant who conclusively establishes each element of an affirmative defense is entitled
to summary judgment. Id. In reviewing a summary judgment, we must accept as true
evidence in favor of the non-movant, indulging every reasonable inference and resolving
all doubts in his or her favor. El Chico Corp. v. Poole, 732 S.W.2d 306, 315 (Tex. 1987). 

 Res judicata is an affirmative defense. Tex. R. Civ. P. 94. It is the generic term for
a group of related concepts concerning effects given final judgments. Puga v. Donna Fruit
Co., 634 S.W.2d 677, 679 (Tex. 1982). Within the general doctrine of res judicata there
are two principal categories: 1) claim preclusion (also specifically known as res judicata);
and 2) issue preclusion (also known as collateral estoppel). Res judicata, or claim
preclusion, prevents the litigation of a claim or cause of action that has been finally
adjudicated, as well as related matters that with the exercise of reasonable diligence, could
have been litigated in the prior suit. Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628
(Tex. 1992). Thus, it is not limited to matters actually litigated in the prior suit, but also
precludes causes of action or defenses that arise out of the same subject matter and which
might have been litigated in the prior suit. Id. at 630.

 A determination of what constitutes the subject matter of a suit necessarily requires
an examination of the factual basis of the claim or claims in the prior litigation. It requires
an analysis of the factual matters that make up the gist of the complaint without regard to
the form of the litigation, and any cause of action which arises out of the same facts
should, if practicable, be litigated in the same lawsuit. Id. at 630 (citing Texas Water
Rights Comm. v. Crow Iron Works, 582 S.W.2d 768, 772 (Tex. 1979)). The definition of
res judicata contained in the foregoing cases is substantially similar to the rule of
compulsory counterclaims embodied in the rules. Tex. R. Civ. P. 97. 

 Thus, to sustain the summary judgment, the record must conclusively establish that
at the time of the May 13, 1993 hearing, Kothmann's claims must 1) have been within the
jurisdiction of the court; 2) not subject to a pending action at the time of the May 13, 1993
hearing; 3) have been mature and owned by Kothmann at the time of the hearing; 4) have
arisen out of the transaction or occurrence that was the subject matter of Cook's claim; 5)
have been against Cook in the same capacity; and 6) did not involve the presence of third
parties over whom the court cannot acquire jurisdiction. Wyatt v. Shaw Plumbing Co., 760
S.W.2d 245, 247 (Tex. 1988).

 In relevant part, the Texas turnover statute provides:

 (a) A judgment creditor is entitled to aid from a court of appropriate
jurisdiction through injunction or other means in order to reach property to
obtain satisfaction on the judgment if the judgment debtor owns property,
including present or future rights to property, that:


 (1) cannot readily be attached or levied on by ordinary legal process; 


* * *


 (b) The court may: 


 (1) order the judgment debtor to turn over nonexempt property that is
in the debtor's possession or is subject to the debtor's control . . .


* * *


 (d) The judgment creditor may move for the court's assistance under this
section in the same proceeding in which the judgment is rendered or in an
independent proceeding . . . .


Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (Vernon Supp. 2003) (emphasis added).

 The turnover statute was enacted to expand procedures by which diligent judgment
creditors could reach the property of their judgment debtors. Cross, Kieschnick & Co. v.
Johnston, 892 S.W.2d 435, 438 (Tex.App.-San Antonio 1994, no writ). As such, it is
purely procedural in nature and does not provide for the determination of the substantive
rights of the parties. Republic Ins. Co. v. Millard, 825 S.W.2d 780, 783 (Tex.App.
-Houston [14th Dist.] 1992, no writ); Cravens, Dargan & Co. v. Peyton L. Travers Co., 770
S.W.2d 573, 576 (Tex. App.--Houston [1st Dist.] 1989, writ denied). It does not create a
right in the judgment creditors and debtors to initiate and incorporate in the proceedings
an entirely different law suit against a third party who is not a part of the original judgment. 
Republic, 825 S.W.2d at 783.

 Because it is dispositive of this appeal, we proceed directly to consider his third
issue. In that issue, Kothmann asserts that Cook failed to conclusively prove that the
current case is based on claims that were or should have been raised at the May 13, 1993
hearing. Because of the special and limited nature of the turnover proceeding, Kothmann
would not have been entitled to raise those substantive claims against Cook had he
attempted to do so. That being so, Kothmann's failure to raise such matters at the time of
the May 13, 1993 hearing was not sufficient to entitle Cook to claim res judicata barring 
the pursuit of this suit.

 Kothmann's third issue is sustained. Because that sustention requires a reversal
of the trial court's judgment, it obviates the necessity for discussion of the remainder of
Kothmann's issues. Accordingly, the judgment of the trial court is reversed and the cause
remanded to the trial court.

 John T. Boyd

 Senior Justice 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 



6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-10-00024-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



AUGUST
25, 2010

 



 

ANTHONY RAY WILLIS, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE CRIMINAL DISTRICT COURT NO.
2 OF TARRANT COUNTY;

 

NO. 1152333D; HONORABLE WAYNE F. SALVANT, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, Anthony Ray Willis,
appeals his conviction for the offense of aggravated robbery[1]
and subsequent sentence of 25 years confinement in the Institutional Division
of the Texas Department of Criminal Justice (ID-TDCJ).  We affirm.

 

 

 

Factual and Procedural Background[2]

            On
March 30, 2009, Irma Martinez Eggers had completed work at the south campus of
Tarrant County College.  Eggers resided
in Bedford but decided to spend the night at the Comfort Inn close to Tarrant
County College because she had to drive early the next morning to Austin.  The Comfort Inn shared a parking lot with a
Dennys restaurant.  After parking her
car in the shared parking lot, Eggers went to Dennys to eat dinner.  Upon completing her meal, Eggers returned to
the car to gather her belongings and go to her room.  

As Eggers began to retrieve her
property from the trunk of her car, she noticed appellant pull the hood of his
sweat shirt up onto his head and start toward her.  As Eggers shut the trunk and looked up,
appellant was standing close to her at the rear of the vehicle.  Appellant told Eggers that he was hungry and
asked for money.  When Eggers replied
that she did not have any cash, appellant stated, See, I dont have a
gun.  Do you have a gun?  Dont shoot me.  While making this statement, appellant opened
his jacket up took a tire iron out from beneath it, and said, I have a tire
iron.  I dont want to hurt you.  Eggers then reached into her purse and gave
appellant $5.00.  

Eggers then attempted to go toward
the hotel but appellant stepped in front of her and began quizzing her about
her personal life.  Eggers continued to
attempt to get to the front door of the hotel, and, as she reached the door and
attempted to open it, appellant put his hand out and closed the door.  Appellant then reached for Eggers and, after
a pause, took her hand and shook it and walked away.  Eggers went inside and had the clerk call 911
to report the incident.

The police arrived and got a
description of appellant.  The officer
taking the report called out the description for other officers in the area to
be on the lookout for appellant.  A short
time later, appellant was located in front of a grocery store about 200 yards
from the hotel.  After being notified
that appellant had been detained, Eggers was transported to the scene of the
detention where she identified appellant as the perpetrator of the robbery.

Appellant was subsequently indicted
for aggravated robbery.  The indictment
filed against appellant alleges that appellant, during the course of committing
theft of property, threatened or placed Eggers in fear of imminent bodily
injury or death and that appellant used or exhibited a deadly weapon, to-wit: a
crowbar or tire tool, that in the manner of its use or intended use was capable
of causing death or serious bodily injury. During the States voir dire on the applicable law, the State discussed the
indictment and the requirement for the use of a deadly weapon.  During this discussion, the States attorney
advised the jury that the law stated a deadly weapon is either a per se deadly weapon, like a gun or a
firearm, or anything that in the manner of its use or intended use is capable
of causing serious bodily injury or death. 


At the conclusion of the trial, the
trial court prepared its charge to the jury. 
For purposes of this opinion, there are two portions of the courts
charge that are of concern.  The first
paragraph of concern is the definition of deadly weapon contained in paragraph
2 of the courts charge.  The trial court
defined a deadly weapon as

a firearm
or anything manifestly designed, made, or adapted for the purpose of inflicting
death or serious bodily injury; or anything that in the manner of its use is
capable of causing death or serious bodily injury.

The next portion of the
courts charge that we are concerned with is the application paragraph,
paragraph 5.  In this paragraph, the
court continued to define a deadly weapon as

threaten or place [Egger] in fear of imminent bodily injury or
death, and the [appellant] used or exhibited a deadly weapon, to-wit: a crowbar
or tire tool, that in the manner of its use was capable of causing death or
serious bodily injury. 

There were no objections
by the State or appellant as to these portions of the courts charge.  After argument, the jury began
deliberations.  Thereafter, the jury sent
out the first of two notes to the judge. 
The first note to the trial court requested, Can you please define
manner of its use in relation to the tire tool in Section 5?  The trial court declined to answer the
question and simply referred the jury to the existing charge.  Before the answer of the trial court was
given to the jury, the State requested that the trial court issue an amended
paragraph 5 to read to-wit, crowbar or tire tool that in the manner of its use
or its intended use so that the paragraph tracked the language of the
indictment regarding the tire tool.  At
that time, the trial court refused to make this revision.  

            Subsequently,
the jury sent out a second note that stated, We cant come to a unanimous
decision, what do we do?  In response to this note, the trial court
revisited the subject matter of jury note 1 and determined that the courts
charge in paragraph 5, the charging paragraph, was in error because it failed
to contain the phrase or intended use while describing the deadly weapon.  Further, the trial court determined that the
definition of a deadly weapon in paragraph 2 of the courts charge would also
have to be amended to include or intended use.  The jury was brought back into the courtroom,
and the trial court read the new paragraphs 2, deadly weapon, and 5,
application paragraph, to include the phrase or intended use.  The jury returned to deliberations and
convicted appellant of aggravated robbery.

            Appellant
contends that the evidence was legally and factually insufficient to support
the judgment of conviction and, further, that the trial court committed
reversible error by submitting a supplemental charge on the definition and
application of deadly weapon.  Because
we disagree with appellant, we affirm.

Sufficiency of the Evidence

Appellants
first two issues contend that the evidence was legally and factually
insufficient to support appellants conviction. 
As appellant challenges both the legal and factual sufficiency of the
evidence, we are required to conduct an analysis of the legal sufficiency of
the evidence first and, then, only if we find the evidence to be legally
sufficient, do we analyze the factual sufficiency of the evidence.  See Clewis
v. State, 922 S.W.2d 126, 133 (Tex.Crim.App.
1996).  We will address these contentions
in one section of this opinion.

 

 

 

Legal Sufficiency of the Evidence

Standard of Review

            In
assessing the legal sufficiency of the evidence, we review all the evidence in
the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State,
133 S.W.3d 618, 620 (Tex.Crim.App. 2004).  In conducting a legal sufficiency review, an
appellate court may not sit as a thirteenth juror, but rather must uphold the
jurys verdict unless it is irrational or unsupported by more than a mere
modicum of evidence.  Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App.
1988).  We measure the legal
sufficiency of the evidence against a hypothetically correct jury charge.  See Malik
v. State, 953 S.W.2d 234, 240 (Tex.Crim.App.
1997).

Analysis

            Under
a hypothetically correct jury charge, the State had to prove that: 1) on or
about March 30, 2009; 2) appellant; 3) intentionally or knowingly; 4) while in
the course of committing theft; 5) with intent to obtain and maintain control
over said property; 6) threatened or placed Eggers in fear of imminent bodily
injury or death, 7) that appellant used or exhibited a deadly weapon, to-wit: a
crowbar or tire tool; 8) that in the manner of its use or intended use was
capable of causing serious bodily injury or death.  

            In
the case before the Court, it is undisputed that appellant approached Eggers in
a parking lot after dark.  The record
reflects that Eggers saw appellant coming toward her and was frightened.  Further, appellant requested money from
Eggers, and, when he was advised that she had no cash, he began asking her if
she had a gun.  Appellant followed that
statement up with a declaration that he did not have a gun but opened up his
jacket and pulled out a tire iron stating that I have a tire iron.  Eggers testified that appellant then stated,
I dont want to hurt you.  This
statement resulted in Eggers reaching in her purse and giving appellant
$5.00.  

            When
we apply the test for legal sufficiency of the evidence to the hypothetically
correct charge and these facts, we are of the opinion that the jury was acting
rationally when it found appellant guilty beyond a reasonable doubt.  See Jackson, 443 U.S. at 319; Ross,
133 S.W.3d at 620. 
Appellants first issue is overruled.

Factual Sufficiency of the Evidence

Standard of Review

            When
an appellant challenges the factual sufficiency of the evidence supporting his
conviction, the reviewing court must determine whether, considering all the
evidence in a neutral light, the jury was rationally justified in finding the
appellant guilty beyond a reasonable doubt. 
See Watson v. State, 204 S.W.3d 404,
415 (Tex.Crim.App. 2006).  In performing a factual sufficiency review,
we must give deference to the fact finders determinations if supported by
evidence and may not order a new trial simply because we may disagree with the
verdict.  See id. at 417.  As an
appellate court, we are not justified in ordering a new trial unless there is
some objective basis in the record demonstrating that the great weight and
preponderance of the evidence contradicts the jurys verdict.  See id.  Additionally, an appellate opinion addressing
factual sufficiency must include a discussion of the most important evidence
that appellant claims undermines the jurys
verdict.  Sims v.
State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).  However, when a defendants version of the
facts conflicts with other evidence, it is the jurys prerogative to judge the
credibility of the evidence and to ascribe the weight to be given to the
evidence.  Jones v.
State, 944 S.W.2d 642, 647-48 (Tex.Crim.App.
1996).

            Appellants
contention is that the evidence that the jury heard was consistent with the
appellant simply approaching Eggers as a panhandler looking for some
money.  Additionally, appellant contends
that, through the testimony of his sister, he provided a logical alternate
explanation for his possession of the tire tool.  The sister testified that she had purchased a
car that developed brake issues. 
Appellant was to help her by repairing the brakes, but the car did not
have a jack nor a tire tool to use on a jack. 
Appellant offered to get a tire tool if his sister could find a
jack.  According to the sister, this all
occurred in late March 2009.  Further,
appellant contends that there was factually insufficient evidence to prove that
appellant ever used a deadly weapon. 
These are the contentions and evidence that appellant contends should
undermine our confidence in the verdict of the jury.  See Sims, 99
S.W.3d at 603.

            Initially,
we observe that, if the jury believed Eggerss testimony, there was sufficient
evidence to prove that she was in fear of imminent bodily injury or death.  Further, the evidence was not contradicted
that appellant reached inside his jacket and came out with a tire tool within
seconds after asking Eggers for money. 
Appellant contends that this action was simply an attempt to show Eggers
that he did not have a gun.  However,
appellant followed that action with a statement.  He either told Eggers Maam, I dont want to
have to hurt you or, Now, I dont want to hurt you.  The jury found by its verdict that appellant threatened
Eggers after asking for money.  Such a
finding is consistent with the theory of aggravated robbery that the State put
forth.

            While
conducting a factual sufficiency review, we must give deference to the fact
finders determinations if supported by evidence and may not order a new trial
simply because we may disagree with the verdict.  Watson, 204 S.W.3d
at 417.  It is the jurys
prerogative to judge the credibility of the evidence and to ascribe the weight
to be given to the evidence.  Jones,
944 S.W.2d at 647-48. 
Therefore, we cannot say that the verdict reached by the jury was not
rationally justified.  Watson, 204 S.W.3d at 415. 
Accordingly, the evidence was factually sufficient, and appellants
second issue is overruled.

Supplemental Charge

            Appellants
third issue is that the trial court committed reversible error when the court
gave the jury a supplemental charge regarding a deadly weapon by adding the
words or intended use.  Appellant
posits that article 36.16 of the Texas Criminal Code of Procedure mandates that
the trial court erred by giving the additional instructions and charge.  See Tex.
Code Crim. Proc. Ann. art.
36.16 (Vernon 2006).[3]  The applicable portion of article 36.16
provides as follows:

After the argument begins no further charge shall be given to the jury
unless required by the 
improper argument of counsel or the request of the jury, or
unless the judge shall, in his discretion, permit the introduction of other
testimony, and in the event of such further charge, the defendant, or his
counsel shall have the right to present objections.

Id. 
According to appellants theory, none of the exceptions outlined in the
article apply. Therefore, appellant contends the trial court committed
reversible error by giving the supplemental charge.  

            Under
the article, a trial court is authorized to give a supplemental charge if 1)
there is improper argument, 2) the jury requests such supplemental charge, or
3) if additional testimony is allowed.  See
id.  Additionally, the Texas Court
of Criminal Appeals has consistently held that a trial court may withdraw and
correct its charge if convinced an erroneous charge has been given.  See Roberson v. State, 113
S.W.3d 381, 384 (Tex.App.Fort Worth 2003, pet. refd) (citing Smith v. State, 898 S.W.2d 838,
854-55 (Tex.Crim.App. 1995)).

            A
review of the jurys note 1 reveals that the jury was asking for additional
instruction.  In jury note 1, the jury
asked, Can you please define manner of its use in relation to the tire tool in
Section 5?  When the jury sent the note
out neither the definition of deadly weapon nor the application paragraph
contained the phrase or intended use when describing the tire tool as a
deadly weapon or defining deadly weapon. 
In accordance with the Roberson opinion, we view the first jury
note as a request for additional instruction. 
See id. at 385. 
Additionally, we believe the State was correct when it requested the
additional charge because the charge as submitted was erroneous.  The Penal Code definition of a deadly weapon
includes the omitted phrase.  See Tex. Penal Code Ann. § 1.07(17)(B) (Vernon Supp. 2009). 
As submitted, the charge did not give the complete definition;
therefore, such definition was erroneous. 
See Smith, 898 S.W.2d at 854.  Further, the indictment included the absent
clause, and the charging paragraph, paragraph 5, did not.  Again, the failure to track the indictment
led to an incomplete charge which we view as being an erroneous charge.  Id. 
Therefore, because we find that the jury requested an addition to the
charge and because the charge was erroneous as given, the trial court did not
err when it elected to give the additional charge.  Appellants third issue is overruled.

Conclusion

            Having
overruled all of appellants issues, the judgment of the trial court is
affirmed.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

Do
not publish.  

 











[1]
See
Tex. Penal Code Ann. § 29.03(a)(2) (Vernon 2003).

 





[2]
Pursuant to the Texas Supreme Courts docket
equalization efforts, this case was transferred to
this Court from the 2nd Court of Appeals.  See Tex.
Govt Code
Ann. § 73.001 (Vernon 2005).





[3]
Further reference to the Texas Code of Criminal
Procedure shall be by reference to art. ___ or article ____.