Ernest **DELESMA**, et al.,
**Plaintiffs-Appellants,**

v.

**CITY OF DALLAS and the State Fair of Texas, Defendants-Appellants.**

No. 84–1582.

United States Court of Appeals,
Fifth Circuit.

Sept. 16, 1985.

---

Before RUBIN, WILLIAMS and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

The children of Guadalupe Delesma (appellants)[1] sued the City of Dallas and the State Fair of Texas (appellees) on the ground that appellees' gross negligence in 1960 caused Delesma's death in 1982. The complaint asserted claims arising under 42 U.S.C. § 1983 (1982), and the Texas Wrongful Death Act, Tex.Rev.Civ.Stat.Ann. arts. 4671–4678 (Vernon 1952 & Supp.1985). The district court granted appellees' motion for summary judgment. 588 F.Supp. 35 (N.D.Tex.1984). We affirm.

I.

J.W. Henson regularly worked for the City of Dallas Police Department. But on October 14, 1960, he moonlighted as a security guard at the Texas State Fair in Dallas. While acting in that capacity that evening, he accosted, searched, and tried to question Guadalupe Delesma, a paying visitor to the fairgrounds. Henson's behavior scared Delesma, and he fled. Henson shot and wounded him.

A few months later Delesma brought a state court action seeking damages from Henson and the State Fair. His petition alleged claims sounding in battery and negligence. Upon trial, however, the jury's answers to special interrogatories found that Henson did not commit battery and that Delesma's behavior constituted contributory negligence. The trial court accordingly entered a take-nothing judgment on both of Delesma's claims. He did not appeal.

Delesma died in 1982. His children, all of whom were born after the shooting, filed this suit less than a year later. Their complaint alleged that appellees were

Michael M. Daniel, Elizabeth K. Julian, Dallas, Tex., for plaintiffs-appellants.

Jeffrey S. Lynch, James S. Renard, Sam A. Lindsay, Asst. City Atty., Dallas, Tex., for defendants-appellants.

1. The complaint named Ernest Delesma, Gabriel Delesma, Guadalupe Delesma, Jr., Mario Delesma, and Francis Delesma as plaintiffs. It also designated Maryann Rittenberry as the "next friend" of all the Delesma plaintiffs save Ernest.

grossly negligent in failing properly to train and supervise Henson. The inadequate training and supervision led Henson unjustifiably to use deadly force, and the head wound that Delesma suffered as a consequence brought about his death twenty-two years later. The complaint demanded compensatory and punitive damages.

Appellants posited liability on the basis of two theories. Under the first, appellees deprived Delesma of life without due process of law and thus violated his Fourteenth Amendment rights. The other theory involved "a cause of action under the Texas Wrongful Death statute."

The district court rendered summary judgment against appellants on May 25, 1984. It reasoned that the Texas Wrongful Death Act gave appellants no better rights against appellees than Delesma himself had at his death. Since the statute of limitations had run against Delesma long before, the court concluded, the Wrongful Death Act precluded appellants' claims as well. The court did not explain its rationale for applying the Texas statute to the federal civil rights claim.

Appellants for the first time in this Court assert that Delesma's alleged wrongful death violated *their* Fourteenth Amendment rights because it deprived them of a "liberty" interest without due process of law.[2] Although we normally disregard such afterthoughts, *see, e.g., Irby v. Sullivan,* 737 F.2d 1418, 1423 (5th Cir.1984), treating the belated claim as if appellants had properly raised it below will conserve judicial resources. Since under our analysis the new cause of action fares no better than appellants' other claims, a remand for amendment of the complaint would serve no useful purpose.

We affirm the decision of the district court on the separate ground that the judgment in Delesma's state tort suit extinguished any right of appellants to assert claims involving the injuries that Delesma suffered in 1960. Our holding does not stem from a reading of federal law only. Because of the interaction between sections 1983 and 1988 of 42 U.S.C., federal law requires application of Texas law to the section 1983 claims.

## II.

The Reconstruction Civil Rights Acts fail to specify many needed rules that affect the outcome of civil rights litigation. In section 1983 cases, the necessity of looking beyond the statute for such rules recurs because section 1983 does little more than create a cause of action.[3] Congress meant for the statute to serve only that general function, however, and it indicated that intention by enacting 42 U.S.C. § 1988 (1982).[4] That statute purports to govern

---

**2.** We intimate no opinion of appellants' contention that the killing of a parent infringes a liberty interest of his or her child. We simply assume for purposes of this suit that such a cause of action exists.

**3.** Section 1983 speaks laconically:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or caused to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (1982).

**4.** Section 1988 is more cryptic:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title "CIVIL RIGHTS," and of Title "CRIMES," for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to

the choice of law in all cases involving claims under the Reconstruction Civil Rights Acts.[5]

Under section 1988, federal courts must undertake a three-step inquiry to determine whether to fill a deficiency in the Acts by borrowing a state rule:

First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." *Ibid.* If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified by the constitution and statutes" of the forum state. *Ibid.* A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States." *Ibid.*

*Burnett v. Grattan,* 468 U.S. ——, ——, 104 S.Ct. 2924, 2928–29, 82 L.Ed.2d 36 (1984); *see Wilson v. Garcia,* —— U.S. ——, ——, 105 S.Ct. 1938, 1942–43, 85 L.Ed.2d 254 (1985) (quoting *Burnett*). "Regardless of the source of the law applied in a particular case, ... it is clear that the ultimate rule adopted under § 1988 ' "is a federal rule responsive to the need whenever a federal right is impaired." ' " *Robertson v. Wegmann,* 436 U.S. 584, 588, 98 S.Ct. 1991, 1994, 56 L.Ed.2d 554 (1978) (quoting *Moor v. County of Alameda,* 411 U.S. 693, 703, 93 S.Ct. 1785, 1792, 36 L.Ed.2d 596 (1973)).

## III.

### A.

The issue that requires a section 1988 analysis arises from the impact that Delesma's action in state court exerts on appellants' claims. In particular, if appellants' claims "derive" from Delesma's cause of action for personal injuries, a res judicata defense that would bar Delesma from as-

---

and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C. § 1988 (1982) (provisions governing attorney fee awards omitted).

**5.** The scope of § 1988 remains in considerable doubt. So far, the Supreme Court has invoked the section as authority for borrowing state law only in the context of statutes of limitations, *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Burnett v. Grattan,* 468 U.S. ——, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984); *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), tolling of the limitations period, *Chardon v. Soto,* 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983), and survival of actions following the death of a party, *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978). We have construed the statute to govern survival of actions, *Brazier v. Cherry,* 293 F.2d 401 (5th Cir.), *cert. denied,* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961), and contribution among constitutional tortfeasors, *Dobson v. Camden,* 705 F.2d 759, 761 (5th Cir.1983), *modified on reh'g en banc,* 725 F.2d 1003 (5th Cir.1984), and we have suggested that it determines the rules controlling damages that a § 1983 plaintiff may recover, *Grandstaff v. City of Borger,* 767 F.2d 161, 171 (5th Cir.1985) (citing *Brazier* as authority for "look[ing] to Texas law for guidance on the damages recoverable for James Grandstaff's death").

Yet, as at least one commentator has pointed out, "[w]ith respect to other issues under section 1983, the Court has simply ignored section 1988 in enunciating a federal common law." Kreimer, *The Source of Law in Civil Rights Actions: Some Old Light on Section 1988,* 133 U.Pa.L. Rev. 601, 604 (1985). Scholars have suggested a number of ways to rationalize the divergence between the civil rights cases borrowing state rules of decision under § 1988 and those simply announcing the relevant principle as a matter of federal common law. *See, e.g., id.* at 628–32 (arguing that Congress intended federal courts to develop federal common law pursuant to § 1988 without deference to state law); Eisenberg, *State Law in Federal Civil Rights Cases: The Proper Scope of Section 1988,* 128 U.Pa.L. Rev. 499, 500 (1980) (maintaining that § 1988 "makes sense today only when it is applied to actions that are removed from state to federal court pursuant to civil rights removal provisions"); Comment, *Choice of Law under Section 1983,* 37 U.Chi.L.Rev. 494, 512 (1970) (advocating restricting adoption of state law under § 1988 to statutes of limitations and survival rules because the "remaining issues are bound up with the definition of the scope of the federal rights and should be resolved by rules of federal common law").

We need not attempt in this case to describe the full ambit of § 1988. It suffices for us to say that we would adopt the rule that Texas law prescribes regardless of the state law preference that § 1988 mandates.

serting a section 1983 claim would equally preclude appellants' civil rights claims. Section 1983 does not specify whether claims such as those of appellants derive from the decedent's cause of action or whether they enjoy an independent existence. Thus, the first step of the analysis reveals no controlling federal law.

### B.

We turn, then, to examine the relevant sources of state law—the Wrongful Death Act, Tex.Rev.Civ.Stat.Ann. art. 4672 (Vernon 1952), and the survival statute, *id.* art. 5525 (Vernon 1958). In Texas, the nature of the cause of action determines which of the statutes controls. A claim that involves damages personal to the plaintiff invokes the Wrongful Death Act.[6] Appellants' claim for wrongful death fits that description, of course, but so does the new section 1983 claim. In contrast to their original civil rights claim, which alleged a violation of Delesma's rights, the later claim asserted an infringement of appellants' Fourteenth Amendment rights. Assuming that such a cause of action exists and that after-born children may assert it, then, appellants' claim that appellees deprived them of their liberty without due process of law fell within the Wrongful Death Act. *See Bell v. City of Milwaukee,* 746 F.2d 1205, 1250–53 (7th Cir.1984) (applying state wrongful death statute to personal civil rights claims of decedent's siblings).

The survival statute, on the other hand, applied to the section 1983 claim that alleged deprivation of the father's rights. *See, e.g., Robertson v. Wegmann,* 436 U.S. at 589–90, 98 S.Ct. at 1995 (holding that "[u]nder § 1988, ... state statutory law ... provides the principal reference point in determining survival of civil rights actions"); *Brazier v. Cherry,* 293 F.2d 401, 405 (5th Cir.) ("[W]e are of the clear view that Congress adopted as federal law the currently effective state law on the general right of survival."), *cert. denied,* 368 U.S. 921, 82 S.Ct. 243, 7 L.Ed.2d 136 (1961).

We conclude that if we follow the state statutes they would invalidate appellants' claims. Under the Wrongful Death Act,[7] a wrongful death claim derives wholly from the cause of action that the decedent could have asserted for personal injuries had he lived. The survivors thus occupy the decedent's legal shoes. Any defense that would have defeated a personal injury claim during his lifetime likewise vanquishes their claims.[8] The survival statute lends no more support to appellant's claim. It does nothing more than preserve for the decedent's estate the causes of action that he held while he lived.[9] The claim that survives the party's

---

**6.** *See Carter v. Van Meter,* 495 S.W.2d 583, 586 (Tex.1973) ("[T]he courts of this state have consistently held that the right of action conferred by the Wrongful Death statutes is personal and for the sole benefit of the named beneficiary....").

**7.** Article 4672 provides:
The wrongful act, negligence, carelessness, unskilfulness or default mentioned in the preceding article must be of such character as would, if death had not ensued, have entitled the party injured to maintain an action for such injury.
Tex.Rev.Civ.Stat.Ann. art. 4672 (Vernon 1952).

**8.** *See Bounds v. Caudle,* 560 S.W.2d 925, 926 (Tex.1978) (noting that survivors "cannot recover in the suit for wrongful death" if doctrine of interspousal tort immunity would have barred decedent's personal injury cause of action); *Schwing v. Bluebonnet Express,* 489 S.W.2d 279 (Tex.1973); *Leal v. C.C. Pitts Sand & Gravel,* 419

S.W.2d 820, 821 (Tex.1967) ("A right of action exists under the Wrongful Death Statute only where the injured party could have maintained an action for damages had death not ensued."); *Vassallo v. Nederl-Americ Stoomv Maats Holland,* 162 Tex. 52, 344 S.W.2d 421, 424 (1961) (holding that "the defendant can assert any defense ... that it could have asserted if the decedent had survived"); *Thompson v. Ft. Worth & R.G. Ry.,* 97 Tex. 590, 80 S.W. 990 (1904); *Washam v. Hughes,* 638 S.W.2d 646, 648 (Tex.App. 1982, writ ref'd n.r.e.) ("A death action cannot be maintained successfully where the decedent could not have recovered, had he survived the injuries.").

**9.** The survival statute provides:
All causes of action upon which suit has been or may hereafter be brought for personal injuries, or for injuries resulting in death, whether such injuries be to the health or to the reputation, or to the person of the injured

death, in other words, also derives solely from the decedent's cause of action. Thus, if appellees could have successfully raised a defense to Delesma's cause of action in a suit against them at the time of his death, they may also successfully defend against appellants' claims.

■ The doctrine of res judicata provides such a defense in this case. In Texas, res judicata means that "the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit." *Texas Water Rights Commission v. Crow Iron Works*, 582 S.W.2d 768, 771–72 (Tex.1979); *see Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985). Moreover, "[t]hat the judgment may have been wrong or premised on a legal principle subsequently overruled does not affect application of *res judicata*." [10] *Segrest v. Segrest*, 649 S.W.2d 610, 612 (Tex.1983). Since Delesma could have sued appellees under section 1983 in his own court action, the judgment against him constituted res judicata. Article 4672 and article 5525 make appellees' defense

against Delesma equally good against the claims of appellants.[11]

### C.

It remains to take the final step in the section 1988 analysis—determining "whether application of state law 'would be inconsistent with the federal policy underlying the cause of action under consideration.' " *Robertson v. Wegmann*, 436 U.S. at 590, 98 S.Ct. at 1995 (quoting *Johnson v. Railway Express Agency*, 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975)). The Supreme Court has identified "compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law" as the principal policies that section 1983 embodies. *Id.* at 591, 98 S.Ct. at 1995 (citing, *inter alia, Monroe v. Pape*, 365 U.S. 167, 172–87, 81 S.Ct. 473, 476–84, 5 L.Ed.2d 492 (1961)); *see Burnett v. Grattan*, 468 U.S. at ——, 104 S.Ct. at 2931 ("The goals of the federal [civil rights] statutes are compensation of persons whose civil rights have been violated, and prevention of the abuse of state power."); *Board of Regents v. Tomanio*, 446 U.S. at 488, 100 S.Ct. at 1797 (discussing *Robertson* ); *cf. Chardon v. Soto*, 462 U.S. at 656, 103 S.Ct. at 2616 (also identifying, but dis-

party, shall not abate by reason of the death of the person against whom such cause of action shall have accrued, nor by reason of the death of such injured person, but, in the case of death of either or both, all such causes of action shall survive to and in favor of the heirs and legal representatives and estate of such injured party and against the person, or persons liable for such injuries and his or their legal representatives, and may be instituted and prosecuted as if such person or persons against whom same accrued were alive.

Tex.Rev.Civ.Stat.Ann. art. 5525 (Vernon 1958).

**10.** Accordingly, although Texas has since abolished the contributory negligence defense on which the judgment against Delesma partly rested, *see* Tex.Rev.Civ.Stat.Ann. art. 2212a, § 1 (Vernon Supp.1985) (establishing comparative negligence system), the Texas doctrine of res judicata would still bar Delesma from asserting claims arising under § 1983.

**11.** We pretermit the different question of whether res judicata directly bars the claims of appellants. Although the American Law Institute's

formulation of the doctrine apparently would preclude the claims, *see* Restatement (Second) of Judgments §§ 45, 46 (1982), no Texas court has expressly adopted, implicitly accepted, or even casually acknowledged the Restatement rule. Accordingly, we do not find it necessary to apply the separate principles that govern the preclusive effect of state court judgments in federal court actions. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, —— U.S. ——, ——, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985) (stating that 28 U.S.C. § 1738 "directs a federal court to refer to the preclusion law of the State in which judgment was rendered"); *Migra v. Warren City Dist. Bd. of Educ.*, 465 U.S. 75, ——, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983); *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Brister v. Parish of Jefferson*, 747 F.2d 1019, 1021 (5th Cir.1984).

counting the importance of, "uniformity" and "federalism" as section 1983 policies). We conclude that applying the Texas rule that makes the claims of survivors wholly derivative of the decedent's cause of action does not conflict with the goals of section 1983.

The fact that employing the Texas rule in this case denies compensation to appellants does not suffice to render the borrowing impermissibly inconsistent with federal law. As the Court said in *Robertson*:

> A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation. If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant. But § 1988 quite clearly instructs us to refer to state statutes; it does not say that state law is to be accepted or rejected based solely on which side is advantaged thereby.

436 U.S. at 593, 98 S.Ct. at 1996–97. The relevant question, in other words, is whether the rule itself undermines the compensatory function of section 1983, not whether appellants recover damages.

At least as it applies in this case, the rule under which appellants' claims are found to be dependent upon Delesma's claims is in accordance with section 1983 goals. During his lifetime, Delesma sought to recover for the injuries that appellees allegedly caused him. Had he prevailed, appellants would have primarily benefitted. We find that cutting off their right to sue appellees for exactly the same event does not conflict with the compensatory policy underlying section 1983.

Nor does the Texas rule impair the policy of deterring official illegality. Nothing in section 1983 mandates deterrence through a multiplicity of suits. The prospect of an action by the decedent during his lifetime certainly suffices to prevent officials from abusing their authority. Section 1983 should deter; it should not oppress.

IV.

We emphasize that we need not and do not adopt *in toto* the Texas rule that any defense good against plaintiffs' decedent also bars plaintiffs' claims. Rather, we here accept and apply the rule only to the extent it precludes the section 1983 claims of survivors where their decedent sued during his lifetime for the personal injuries that form the sole basis of the survivors' claims. Applying the rule to this case results in denying appellants' section 1983 claims. Accordingly, we hold that the district court committed no error in granting appellees' motion for summary judgment and dismissing appellants' action.

AFFIRMED.