United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 22, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

—————————————

No. 04-30182

—————————————

TINSIE CROWDER; CONNER CROWDER; CHRISTIAN CROWDER,

Plaintiffs-Appellants,

versus

AMERICAN EAGLE AIRLINES INC ETC; ET AL,

Defendants,

AMERICAN EAGLE AIRLINES, Successor-in-interest to formerly known
as Wings West Airlines, Inc, Inc; AMERICAN AIRLINES, Inc,

Defendants-Appellees.

—————————————

Appeal from the United States District Court
for the Western District of Louisiana
(No. 03-CV-1157)

—————————————

Before REAVLEY, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants Tinsie Crowder, Conner Crowder, and
Christian Crowder (collectively the "Crowder Family") filed suit in
federal district court against Defendants-Appellees, American Eagle
Airlines, Inc. ("American Eagle") and its parent corporation,
American Airlines, Inc. ("American"), for the wrongful death of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

their husband and father, William Crowder.  The district court referred the case to a magistrate judge who recommended dismissal for failure to state a claim.  After correcting several of the magistrate judge's factual findings, the district court adopted the recommendation and dismissed the case.  We affirm.

## I.  FACTS AND PROCEEDINGS

### A.  BACKGROUND FACTS

The Crowder Family's action arises from a pre-employment physical examination that Crowder underwent in November 1995.  He had applied for a position as a pilot with American Eagle and was offered a position with Wings West Airlines, Inc. (then a subsidiary of American Eagle), conditioned in part on his passing a physical examination administered by American's medical department.  In the course of this examination, Crowder underwent tests that revealed above-normal blood pressure and cholesterol levels.  These results were allegedly not disclosed to Crowder.  He was hired as a pilot, and suffered a severe heart attack in 1996 which permanently damaged his heart muscle.

Following his heart attack, Crowder allegedly became aware for the first time of the medical information that American had obtained through the pre-employment physical examination. He filed two successive lawsuits in Texas state court based on the nondisclosure of that information.  The first suit ("Crowder I") was filed against American for actual and constructive fraud and

violations of the Texas Deceptive Trade Practices-Consumer Protection Act. In it, Crowder claimed that American had failed to disclose the results of his medical tests and intentionally concealed and withheld critical medical information concerning his coronary risk factors. American filed a summary judgment motion for dismissal, which was granted. On appeal, the state court ruled that Crowder's suit was essentially for medical malpractice or negligence, and that it could not succeed because no physician-patient relationship existed.[1] Crowder's rehearing petition to the Texas Supreme Court was denied.

Crowder's filed his second state court suit ("Crowder II") against American Eagle, alleging the concealment of medical examination results that would have revealed his elevated blood pressure and cholesterol readings. In his second suit, Crowder claimed actual and constructive fraud, breach of express and implied contract, promissory estoppel, breach of fiduciary duty, organized unlawful conduct, and conversion. The trial court granted American Eagle's no-evidence summary judgment motion. The Texas appellate court affirmed, concluding that Crowder had failed to produce evidence to show that American Eagle knew of his cardiac risk factors or that the company had a nondisclosure policy.[2] The

---

[1] Crowder v. Am. Airlines, Inc., No. 05-99-00661-CV, 2000 WL 471520, at *2 (Tex. App. — Dallas April 25, 2000, pet. denied).

[2] Crowder v. Am. Eagle Airlines Inc., No. 05-02-00069-CV, 2003 WL 559402, at *2-3 (Tex. App. — Dallas Feb. 28, 2003, pet. denied).

court rejected his breach of contract and promissory estoppel claims.[3]  Crowder's rehearing petition to the Texas Supreme Court was denied.

**B.  THE INSTANT LITIGATION**

In June 2003, following Crowder's death, the Crowder Family filed the present suit against American and American Eagle in the federal district court for the Western District of Louisiana.  The complaint, twice amended, alleges gross negligence, breach of express and implied contract, promissory estoppel and breach of fiduciary duty.  American Eagle and American filed a 12(b)(6) motion to dismiss for failure to state a claim, arguing that the Full Faith and Credit Clause of the United States Constitution required the district court to dismiss the present case in light of the two Texas state court judgments adverse to Crowder.  These defendants argued in the alternative that, under Louisiana law, the wrongful death beneficiaries of a decedent can have no greater rights against a defendant than had the decedent himself.  The case was referred to a magistrate judge who conducted a conflict of law analysis and concluded that Texas law should be applied, noting, however, that the result would be the same under Louisiana law. The magistrate judge determined that the Texas Wrongful Death Act bars the Crowder Family's claims and recommended granting the defendants' 12(b)(6) dismissal motion.

---

[3] Id.

4

The district court first ruled that the magistrate judge had made errors in his findings of fact; specifically, that he had improperly relied on the Crowder Family's first amended complaint instead of their second amended complaint, which had been submitted following the filing of the defendants' 12(b)(6) motion. In their second amended complaint, the Crowder Family had abandoned their fraud claims and had added a claim of gross negligence. The district court nevertheless concluded that its corrected findings of fact did not undermine the substance of the magistrate judge's recommendation and dismissed the Crowder Family's action.[4] The Crowder Family timely filed a notice of appeal.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review de novo the district court's dismissal of a complaint for failure to state a claim on which relief may be granted.[5] A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is viewed with disfavor and is rarely granted."[6] The district court may not dismiss a case under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can

---

[4] The district judge incorrectly identified the magistrate judge's basis for dismissing the appeal as res judicata. The magistrate judge had concluded that the Crowder Family's claims were barred by the provisions of the Texas Wrongful Death Act.

[5] See Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th Cir. 1999).

[6] Id. (quoting Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982).

prove no set of facts in support of his claim which would entitle him to relief."[7]

**B.    APPLICATION OF THE TEXAS AND LOUISIANA WRONGFUL DEATH STATUTES TO THE CROWDER FAMILY'S CLAIMS**

The district court applied Texas law in dismissing the Crowder Family's claims. As we conclude that the Crowder Family's claims fail under the applicable laws of both Texas and Louisiana, a choice of law determination is unnecessary to our decision today.

1.    <u>The Texas Wrongful Death Statute</u>.

The Texas Civil Practice and Remedies Code provides a cause of action for "damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default."[8] Texas law allows recovery "only if the individual injured would have been entitled to bring an action for the injury if the individual had lived or had been born alive."[9] Texas courts have held the survivors' wrongful death cause of action to be <u>derivative</u> of the decedent's cause of action, so that any defense available against a decedent is available against his survivors in a wrongful death suit.[10]

_____

[7] <u>Id.</u> (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46 (1957)).

[8] Tex. Civ. Prac. & Rem. Code Ann. § 71.002(b).

[9] Tex. Civ. Prac. & Rem. Code Ann. § 71.003(a).

[10] <u>See</u> <u>Suber v. Ohio Med. Prod., Inc.</u>, 811 S.W.2d 646, 649 (Tex. App. — Houston 1991, writ denied) ("Due to the derivative

6

For example, prior to her death, the decedent in Suber v. Ohio Medical Product, Inc., had instituted a tort action against six defendants in Texas state court based on allegations of medical malpractice.[11]  At trial, four of the six defendants had moved for an instructed verdict, which was granted, but the decedent recovered a judgment for damages against the remaining defendants. All judgments were affirmed on appeal and became final.  The decedent's death occurred subsequent to the finality of that litigation.  Her heirs instituted another action — this one for wrongful death — grounded in the same facts alleged in the decedent's malpractice action.  The survivors named the same defendants whom the decedent had previously sued.  The defendants filed motions for summary judgment which were granted by the trial court.  On appeal, the Texas court of appeals affirmed, holding that the survivors stood in the decedent's legal shoes and therefore could not institute another action against the same defendants on the same facts:

nature of the wrongful death action, Texas cases have held that any defense to a decedent's cause of action for his own injuries is applicable in a subsequent action for wrongful death.")(citing Bounds v. Caudle, 560 S.W.2d 925, 926 (Tex. 1977) (interspousal tort immunity) and Thompson v. Fort Worth and R.G. Ry. Co., 97 Tex. 590, 80 S.W. 990, 991 (1904) (settlement and release)); see also Slaughter v. Southern Talc Co., 949 F.2d 167, 173 (5th Cir. 1991) (citing Suber for the proposition that "[p]laintiffs in a wrongful death action are in the procedural shoes of the decedent, and defenses to the decedent's personal injury action are defenses to the wrongful death plaintiffs' claim").

[11] 811 S.W.2d 646 (Tex. App. — Houston 1991, writ denied) (en banc).

7

> [Decedent] Christy Suber pursued her action for personal injuries to judgment. Thus, res judicata would have barred a second suit by Christy Suber for her injuries, since there would have been an identity of parties, issues and subject matter. . . . Because Christy Suber could not have brought another action if she had survived, [§ 71.003(a)] precludes appellants from maintaining a wrongful death action.[12]

We reached a similar result in <u>Delesma v. City of Dallas</u>.[13] Prior to his death, the decedent in <u>Delesma</u> had filed suit in a Texas state court after he was shot at the Texas State Fair. The case was tried before a jury, which found in favor of the named defendants and against the decedent. The decedent did not appeal the judgment, and it became final. After decedent's death, his children filed a wrongful death action on the same facts and against the same defendants who had been named by the decedent in the first lawsuit. We affirmed the grant of the defendants' motion for summary judgment, holding that the Texas wrongful death statute did not give the decedent's wrongful death survivors any better rights against these same defendants than the decedent himself had at the time of his death. Interpreting the predecessor to the current Texas wrongful statute, we ruled that a successful defense against a decedent's cause of action vanquishes his survivors' wrongful death claims grounded in the same transaction:

> The doctrine of res judicata provides such a defense in this case. In Texas, res judicata means that "the judgment in the first suit precludes a second action by

---

[12] <u>Id.</u> at 649-50 (internal citations omitted).

[13] 770 F.2d 1334 (5th Cir. 1985).

8

the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit." . . . Since Delesma could have sued appellees under section 1983 in his own court action, the judgment against him constituted res judicata. Article 4672 [predecessor to § 71.003(a)] and article 5525 make appellees' defense against Delesma equally good against the claims of [the survivors].[14]

Relying primarily on Suber and Delesma, American and American Eagle insist that the doctrine of res judicata would bar Crowder from asserting claims grounded in his physical examination, and that this bar defeats the Crowder Family's claims under the Texas wrongful death statute. We agree.

Texas employs the transactional approach to res judicata.[15] "The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit."[16] Any cause of action arising out of the same transaction is barred. In determining whether the transaction is the same, courts consider and weigh "whether the facts are related

---

[14] Id. at 1339.

[15] See Barr v. Resolution Trust Corp., 837 S.W.2d 627, 631 (Tex. 1992).

[16] Id. at 630 (emphasis in original) (quoting Texas Water Rights Comm. v. Crow Iron Works, 582 S.W.2d 768, 771-72 (Tex. 1979)).

9

in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage."[17]

Had Crowder brought the claims currently being asserted by the Crowder Family as his wrongful death beneficiaries, the doctrine of res judicata would have served as a successful bar to these claims; therefore, under the Texas Wrongful Death Statute, the Crowder Family's claims are barred. Questions of breach of express and implied contract, promissory estoppel, and breach of fiduciary duty were fully litigated in Crowder's Texas lawsuits. It is true that Crowder never expressly pleaded a claim of gross negligence in his suits against American or American Eagle, but that claim arises out of the same subject matter, and is a claim that should have been brought by Crowder in his state court suits. Texas law bars the Crowder Family's action here.

2.   The Louisiana Wrongful Death Statute.

The Louisiana Civil Code creates a wrongful death cause of action for specified family members of a decedent.[18] Unlike Texas, Louisiana courts have held that the rights of wrongful death

---

[17] Id. at 631 (quoting Restatement (Second) of Judgments § 24(2)).

[18] See La. Civ. Code Ann. art. 2315.2.

10

beneficiaries are not derivative of the decedent's rights.[19] Rather, Civil Code Article 2315.2 "clearly and unambiguously expresses that the wrongful death action compensates the beneficiaries for their own injuries suffered as a result of the victim's death."[20]

In Sellers v. Seligman, however, a Louisiana court of appeals held that Article 2315[21] "does not provide a right to a beneficiary's survival action when the decedent fully litigated and lost an action arising from the same alleged tort."[22] The decedent in Sellers had instituted an action against four manufacturers to recover damages for injuries suffered as a result of having contracted silicosis while working as a sandblaster/painter. A jury returned a verdict in favor of the manufacturers. Following the decedent's death, his surviving sons instituted a wrongful death action against the same four manufacturers. The action was dismissed by the trial court which ruled that the claim had been litigated previously. The Louisiana court of appeals affirmed, holding that, because "there was no offense" as a result of the

---

[19] See Walls v. Am. Optical Corp., 740 So.2d 1262, 1274 (La. 1999) ("We do not consider the wrongful death action to be a derivative cause of action.").

[20] Id. at 1269-70.

[21] The statute litigated was the predecessor to Article 2315.2.

[22] 496 So.2d 1154, 1156 (La. App. 4th Cir. 1986).

defendants' being exonerated in the prior action, "there is no wrongful death action available to the survivors."[23]

The Crowder Family argues that the more recent Louisiana Supreme Court case of Walls v. American Optical Corp. abrogates the reasoning of Sellers, so that their claims are not barred by the final judgments in Crowder I and Crowder II. There is language in Walls that, when taken out of context, supports this view. The Walls court stated that "the wrongful death action is an independent and distinct action that arises even in the absence of a viable personal injury action by the direct tort victim and compensates the beneficiaries for their own individual injury arising out of the victim's death."[24] Walls posed the question whether wrongful death plaintiffs had a vested cause of action prior to the enactment of a statute that, following its passage, provided immunity to those defendants. The Louisiana Supreme Court held that the wrongful death action did not vest prior to the decedent's death, and therefore the statute providing immunity to the defendants was applicable to the plaintiffs' claims.[25] When read in context, though, the better interpretation of Walls and a subsequent Louisiana court of appeals case is that procedural bars to a decedent's claim do not extinguish a wrongful death action

---

[23] Id.

[24] Walls, 740 So.2d at 1274.

[25] Id. at 1270

12

because they arise at different times and address different injuries;[26] but that <u>Walls</u> cannot be read to establish the same rule for the substantive issue of <u>liability</u>.

The question of liability is the same in both a decedent's direct cause of action and his survivors' independent wrongful death cause of action brought against the same defendants and based on the same facts. The <u>Walls</u> court acknowledged this in cataloging the differences between a <u>survival</u> action, which is derivative of a decedent's cause of action under Louisiana law, and a <u>wrongful death</u> action which is independent:

> Although <u>both actions arise from a common tort</u>, survival and wrongful death actions are separate and distinct. Each right arises at a different time and addresses itself to the recovery of damages for totally different injuries and losses . . . .[27]

Thus, issues of liability that are decided against a decedent are final as to issues of liability in a subsequent wrongful death action — a conclusion supported by <u>Sellers</u> and adopted by the Restatement (Second) of Judgments § 46.[28] A logical corollary is

---

[26] <u>See</u> <u>Rajnowski v. St. Patrick Hosp. of Lake Charles</u>, 768 So.2d 88 (La. App. 3d Cir. 2000) (wrongful death action not barred by prior case holding prescription barred decedent's claim because the wrongful death cause of action did not arise until decedent's death).

[27] <u>Walls</u>, 740 So.2d at 1274 (quoting <u>Taylor v. Giddens</u>, 618 So.2d 834, 840 (La. 1993) (emphasis added).

[28] <u>See also</u> 12 William E. Crawford, <u>Louisiana Civil Law Treatise</u> § 5.21 (2000). <u>But see</u> <u>K.D.D. Smith v. Cutter Biological</u>, 770 So.2d 392, 411 n. 11 (La. App. 4th Cir. 2000) (speculating in dicta that "[t]he <u>Walls</u> language is also literally broad enough that res judicata would not apply where a

13

that when questions of fact were necessarily litigated on the merits in the decedent's case, his wrongful death survivors are barred from re-litigating those same <u>factual</u> questions in a subsequent wrongful death action.

The Texas court of appeals, in <u>Crowder I</u> and <u>Crowder II</u>, expressly rejected <u>liability</u> on the parts of American and American Eagle, basing these merits holdings on the same theories of liability asserted here by the Crowder Family. The one exception is the Crowder Family's claim for gross negligence. Although Crowder did not expressly plead any negligence claim against American in <u>Crowder I</u>, the Texas appellate court held the suit to be essentially a claim for negligence and ruled that there was none.[29] And, even though the state court in <u>Crowder II</u> did not

judgment against the decedent was rendered prior to death").

Louisiana is a part of the minority of jurisdictions, identified in the Restatement (Second) of Judgments § 46, in which a wrongful death action is construed as creating a cause of action in favor of the beneficiaries that to some degree is independent of the decedent's claim. What this means in most of the minority jurisdictions is that wrongful death beneficiaries can recover supplemental damages to those that a decedent recovered. Although not discussed by the Restatement, it also appears to mean that a wrongful death action could be viable despite the existence of some procedural bar that exists to a decedent's cause of action —— a result that would follow after <u>Walls</u>. With the exception of one Ohio Court of Appeals decision identified in the Reporter's Note to the Restatement, the independence of the wrongful death cause of action has not been interpreted by courts to extend so far as to allow beneficiaries to sue when a determination of no liability was made in the decedent's case against the same defendants.

[29] See <u>Crowder</u>, 2000 WL 471520, at *2. "While there is a difference between negligence and gross negligence, it is only a difference of degree and not kind." <u>Resolution Trust Corp. v.</u>

14

expressly consider a claim of gross negligence, it too made findings of fact that would defeat liability in a claim of gross negligence under either Texas or Louisiana law.  In as much as depecage,[30] which is recognized by Louisiana choice-of-law jurisprudence, could result in application of the Louisiana wrongful death statute, followed by application of Texas law to the Crowder Family's substantive claims, we analyze the gross negligence standards of both Texas and Louisiana.

In Texas, gross negligence includes two elements:  (1) When viewed objectively from the standpoint of the actor, his act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, yet proceed in conscious indifference to the rights,

---

Acton, 49 F.3d 1086, 1091 (5th Cir. 1995).  In distinguishing between negligence and gross negligence, we have stated that "[g]ross negligence is substantially and appreciably higher in magnitude than ordinary negligence."  Orthopedic & Sports Injury Clinic v. Wang Lab., Inc., 922 F.2d 220, 224 n.3 (5th Cir. 1991)).  Therefore, the finding by the court in Crowder I that there was no negligence necessarily precludes any finding of gross negligence.

[30] Louisiana's choice of law principles recognize the concept of "depecage."  Under this doctrine, courts must employ an issue-by-issue analysis which may result in laws of different states being applied to different issues in the same dispute. See La. Civ. Code Ann. art. 3515, cmt. (d).  For example, even though the question of which state's wrongful death statute applies could be viewed as pertaining to issues of loss distribution and result in the application of one state's law, the subsequent question of liability could be viewed as pertaining to conduct and safety and result in the application of another state's law.

safety, or welfare of others.[31]  The first element, "extreme risk,"

does not include remote possibilities of injury or even high

probabilities of minor harm; rather, a real likelihood of serious

injury to the plaintiff is required.[32]  The second element, "actual

awareness," requires the actor to know about the peril, but

demonstrate by his acts or omissions that he did not care.[33]

"Under Louisiana law, gross negligence is willful, wanton and

reckless conduct that falls between intent to do wrong and ordinary

negligence."[34]  Louisiana courts have defined gross negligence as

"the 'want of even slight care and diligence' and the 'want of that

diligence which even careless men are accustomed to exercise.'"[35]

Gross negligence involves "the 'entire absence of care' and the

'utter disregard of the dictates of prudence, amounting to complete

neglect of the rights of others.'"[36]  One Louisiana court has stated

---

[31] See Mobil Oil Corp. v. Ellender, 968 S.W.2d 917, 921 (Tex. 1998); Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 23 (Tex. 1994).

[32] See Lee Lewis Const., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex. 2001); Ellender, 968 S.W.2d at 921.

[33] See Harrison, 70 S.W.3d 778, 785; Ellender, 968 S.W.2d at 921.

[34] Houston Exploration Co. v. Halliburton Energy Serv., Inc., 269 F.3d 528, 531 (5th Cir. 2001) (citing Orthopedic & Sports Injury Clinic, 922 F.2d at 224 n.3).

[35] Ambrose v. New Orleans Police Dept. Ambulance Serv., 639 So.2d 216, 219 (La. 1994) (quoting State v. Vinzant, 7 So.2d 917, 922 (La. 1942)).

[36] Id. at 219-20 (quoting Hendry Corp. v. Aircraft Rescue Vessels, 113 F.Supp. 198, 201 (E.D. La. 1953)).

that one is grossly negligent when he "has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."[37]  "Mere inadvertence or honest mistake does not amount to gross negligence."[38]

In Crowder II, the Texas court made the following findings of fact:

> (a)  [W]e have found no evidence that [American Eagle] had any knowledge of Crowder's elevated blood pressure and cholesterol readings, utilized a secret nondisclosure policy, or even knew Crowder had not received his medical clearance at the time he was hired

> (b)  The stamped form revealed nothing about Crowder's physical examination results except that the MMIN was still needed.  It did not mention Crowder's elevated blood pressure or cholesterol readings or indicate that additional blood pressure readings were required.  There is simply no summary judgment evidence that either Wings West or AMR Eagle had knowledge of the elevated readings or intended to deceive Crowder regarding the results of his medical examination.

> (c)  [T]here is no evidence that AMR Eagle or Wings West had a policy of nondisclosure with respect to the medical examination results.[39]

Given these factual findings, Crowder did not have a viable gross negligence claim under either Texas or Louisiana law: Neither does the Crowder Family.  These findings foreclose any conclusion that

---

[37] Cates v. Beauregard Elec. Co-op., Inc., 316 So.2d 907, 916 (La. App. 3d Cir. 1975), aff'd, 328 So.2d 367 (La. 1976).

[38] Houston Exploration Co., 269 F.3d at 532.

[39] Crowder, 2003 WL 559402, at *2-3.

American Eagle showed conscious disregard for Crowder's peril, or that it demonstrated an utter disregard for the dictates of prudence, amounting to complete neglect of Crowder's rights.

The Crowder Family nevertheless asserts that their gross negligence claim should be allowed to proceed because Crowder was barred by the Texas Workers' Compensation Act ("TWCA") from bringing a gross negligence claim during his lifetime. The TWCA provides the exclusive remedy for an injured worker or his family to recover damages from his employer for work-related injuries or death.[40] Although never addressed directly by the Texas Supreme Court, several Texas courts of appeal have held that the TWCA and the Texas Constitution allow a surviving spouse or child to bring an independent claim for exemplary damages against an employer for gross negligence that resulted in an employee's death.[41]

Assuming the interpretation of the TWCA by the Texas courts of appeal is correct, § 408.001(b) can best be understood as providing the surviving spouse and children with a cause of action when a similar claim by the decedent would be or was blocked by the TWCA.[42]

---

[40] Tex. Lab. Code. Ann. § 408.001(a).

[41] See Tex. Const. art. XVI, § 26; Tex. Lab. Code. Ann. § 408.001(b); Zacharie v. U.S. Natural Res., Inc., 94 S.W.3d 748, 756–58 (Tex. App. — San Antonio 2002, no writ); Perez v. Todd Shipyards Corp., 999 S.W.2d 31, 33 (Tex. App. — Houston 1999, pet. denied).

[42] See Zacharie, 94 S.W.3d at 758 (even though statute of limitations was a bar to any claims the decedent could have brought, there was no bar to the children's claims under § 408.001(b)); Frias v. Atlantic Richfield Co., 999 S.W.2d 97, 104

But if, in a decedent's case, questions of fact and questions of liability were necessarily litigated on the merits, the surviving spouse and children should be blocked from re-litigating those same questions against the same defendants. Even if we assume _arguendo_ that Crowder was covered by the TWCA, the determinations of no liability and the findings of fact in Crowder I and Crowder II foreclose the Crowder Family's gross negligence claims.

### III. CONCLUSION

For the foregoing reasons, the district court's judgment dismissing the Crowder Family's action is, in all respects, AFFIRMED.

---

(Tex. App. — Houston 1999, pet. denied) (Decedent's election to be protected under TWCA did not bar surviving spouse or children from pursuing remedy under 408.001(b)); Smith v. Atlantic Richfield Co., 927 S.W.2d 85, 88 (Tex. App. — Houston 1996, writ denied) (same).

19